**BRADFORD EDWARDS & VARLACK LLP**

Patrick A. Bradford, Partner
12 East 49th Street, 11th Fl.
New York, NY 10017
pbradford@bradfordedwards.com
Tel: (917) 671-9407

April 3, 2023

**VIA ECF AND EMAIL**
Hon. Analisa Torres, United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    **Re:**    *Avangrid Networks, Inc. v. Security Limits Inc.* **(1:22-CV-09622-AT)**

Dear Judge Torres:

We write on behalf of Paulo Silva and Security Limits Inc. ("Defendants"), pursuant to Your Honor's Individual Rule III(A)(ii), and in opposition to Plaintiffs' pre-motion letter ("Letter") seeking disqualification of Bradford Edwards & Varlack LLP ("Bradford Edwards" or the "Firm") as counsel to Defendants. Plaintiffs' basis for disqualification is that a former Firm partner, Camille Joseph Varlack, serves on the Board of Directors of Avangrid, Inc., Plaintiffs' parent company. Plaintiffs assert that Ms. Varlack's voluntary board service creates a "disqualifying conflict[]" and that the Firm is in "possession of privileged communications." Letter at 1.

Ms. Varlack's membership on the Avangrid board does not create a disqualifying conflict of interest in the Firm's representation of Defendants. Ms. Varlack left the Firm effective October 31, 2022 – 19 days after the Letter states that she received the relevant confidential communication. Mr. Varlack never discussed or shared <u>any</u> aspect of her confidential Avangrid board work or information with any person at the Firm.

Avangrid is fortunate to have a board member of Ms. Varlack's considered accomplishments. But Ms. Varlack's position with Avangrid is voluntary and solely for her personal pecuniary benefit. She does not represent the Firm as a board member, and Bradford Edwards has gained no commercial benefit from Ms. Varlack's board service. The Firm has never represented Avangrid or any of its related parents or subsidiaries. None of Ms. Varlack's board compensation has ever accrued to the Firm's benefit. The Firm has never received anything of value from Avangrid, directly or indirectly, nor does it expect to in the future.

Your Honor should reject Plaintiff's weak effort to manufacture a disqualifying conflict of interest based on the Firm's alleged possession of Avangrid "privileged communications." Ms. Varlack could have chosen to receive Avangrid emails at a personal email address. Given the nature of the communications described in the Letter, Ms. Varlack would not have received them at her Bradford Edwards email address if she believed that others at the Firm could or would access them. It is axiomatic that Ms. Varlack elected to receive such communications at her Firm email address

precisely because she understood that the Firm's email systems would maintain confidentiality. Ms. Varlack knew that except for the Firm's IT Administrator, Firm employees lacked access to her email account without her permission, and only an equity partner could request access to her account after her separation. To remove all doubt, no Firm lawyer has ever requested access to Ms. Varlack's email account at any time, either before or after she left the Firm. No Firm lawyer or employee has, at any time, seen any confidential Avangrid communications sent to Ms. Varlack at her Firm email address.

When Ms. Varlack left the Firm, her bio was taken off of the Firm's website. She left to take a high-profile position with New York City, and there were press releases and news coverage regarding her new position. Ms. Varlack's separation from the Firm is a matter of public record.

Mr. Silva was referred to Bradford Edwards in February 2023 by a corporate lawyer who previously did work for Mr. Silva. The only potential conflict at issue was a business conflict on Mr. Silva's part. The Firm notified Mr. Silva of Ms. Varlack's former association with the Firm, and he elected to engage Bradford Edwards, notwithstanding this fact.

## I. Additional Factual Background

Avangrid appointed Ms. Varlack to its board on or about Aug. 5, 2022. She serves in her individual capacity, and her role as a board member is, and was, wholly unrelated to her role as a former Firm partner. The Firm has never represented Avangrid or any of its subsidiaries in any capacity.

Per Plaintiffs' Letter, on Oct. 12, 2022, Avangrid sent Ms. Varlack meeting materials that were marked as "confidential" to her Firm email address, which included a "privileged litigation update" that "discussed this action and other litigation with Defendants." Letter at 2. Ms. Varlack did not discuss or mention the existence of these materials to any lawyer at the Firm. Indeed, the other partners had no knowledge of the email or meeting materials until reading the Letter. To be clear, the Oct. 12 email and attached meeting materials are the sole confidential information that Plaintiffs claim to be in the Firm's possession.[1]

Effective Oct. 31, 2022, Ms. Varlack left Bradford Edwards to take a senior position with the City of New York. Following her departure, Ms. Varlack plays no role in the management of the Firm, receives no salary or compensation of any kind from the Firm, and has no right to take any action regarding the Firm. Ms. Varlack may return to the Firm only upon a majority vote of the current equity partners. She has no unilateral rights regarding Bradford Edwards.

Plaintiffs' claim that Ms. Varlack will "directly profit from her firm's representation of Defendants here" is therefore false. Letter at 3. Other than a small capital account at the Firm – which is unrelated to the Firm's representation of Defendants, and which Ms. Varlack can request to be returned to her at any time – she retains no commercial interest in the Firm, and no financial benefit

---

[1] The undersigned has represented corporations for over 25 years and is familiar with the type of litigation updates described in Plaintiffs' Letter, which are often short descriptions of the procedural status of many litigations. Even though no lawyer at Bradford Edwards has seen the October 12 materials sent to Ms. Varlack (nor could they do so now, as it would constitute a serious ethical violation), if the Court is at all concerned, we would urge an in camera review to determine if the litigation summary described is in fact of consequence.

to the Firm will accrue to Ms. Varlack based on the Firm's representation of Defendants.  Her capital account will not increase while she is separated from the Firm, and any revenue that Bradford Edwards earns in connection with this action will not inure to her benefit.

Bradford Edwards employs an independent information technology administrator ("IT Administrator") to manage its IT function.  This is the same IT Administrator used by the five-office, national law firm where the Firm's equity partners worked prior to founding Bradford Edwards, and with substantially the same IT protocols. The Firm has structured its IT function so that **no employee** can access another employee's email account. A Firm employee would only be able to see another employee's email if: (i) that employee intentionally shared his or her email with others, or (ii) a lead partner authorized the IT Administrator to provide access after the employee had separated from the Firm.  As the Firm's former COO, Ms. Varlack supervised the Firm's IT Administrator during her tenure. Managing Partner Denver G. Edwards has assumed that responsibility since her departure.  Mr. Edwards has not authorized the IT Administrator to grant any lawyer or employee access to Ms. Varlack's email account since she departed.

Defendants retained Bradford Edwards in March 2023 – more than four months after Ms. Varlack left the Firm. Ms. Varlack had no role in (or knowledge of) the Firm decision to represent the Defendants and has no authority over any Firm representation, including that of Defendants. As Your Honor is aware, Bradford Edwards is the second firm to represent Defendants in this case.

## II.     Argument

"It is well settled that a party in a civil action has the 'right to freely choose his or her own counsel.'" *Gurniak v. Emilsen*, 995 F. Supp. 2d 262, 269 (S.D.N.Y. 2014), quoting *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (brackets omitted).  "Thus, the Second Circuit disfavors attorney disqualification, and the party seeking it must meet a high standard of proof." *Gurniak*, 995 F. Supp. 2d at 269 (internal quotation omitted). "Mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted." *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985).

"The standard for disqualification varies depending on whether the representation is concurrent or successive." *Hempstead Video*, 409 F.3d at 133. Plaintiffs incorrectly argue that a concurrent conflict exists here and that the Firm's representation of Defendants is therefore "prima facie improper," because Ms. Varlack remains associated with the Firm. Letter at 3. There can be no concurrent representation here because the Firm does not represent Avangrid, and has never done so.  Even if Ms. Varlack had not left the Firm, there would be no concurrent representation. Rather, in situations such as this, where "the situation…is not a scenario involving traditional concurrent legal representation but rather legal representation of one party and service on a board of directors that is the other party, the Court applies the more lenient standard applicable to successive representation." *Filippi v. Elmont Union Free School Dist*., 722 F. Supp. 2d 295, 306 n.2 (E.D.N.Y. 2010).  Under that standard, an attorney may be disqualified if, among other things, he or she "had access to, or was likely to have had access to, relevant privileged information." *Hempstead Video*, 409 F.3d at 133. Where "the same individual lawyer participated in the prior and current representation," there is a presumption that the lawyer had access to client confidences.  *DeFazio*

*v. Wallis*, 459 F. Supp. 2d 159, 164-65 (E.D.N.Y. 2006). But where, as here, the "prior representation" – Ms. Varlack's service on the Avangrid board – and the subsequent representation involve different attorneys, "the firm itself will be permitted to defend against disqualification by showing that the conflicted attorney was subject to appropriate 'screening' measures." *Id.* at 166.

Here, it is clear that Ms. Varlack was subject to "appropriate 'screening' measures." *Id.* First, and most importantly, Ms. Varlack left the Firm over five months ago, long before it was retained by Defendants. There is therefore no possibility that Ms. Varlack will be "working together in the same space" with other Firm attorneys and thus "likely to discuss" the issues and information relevant to this action. *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 22228, at *102 (E.D.N.Y. Feb. 23, 2016) (presumption that client confidences are shared among lawyers "stems from the notion that attorneys who are working together in the same space are likely to discuss with one another the issues that arise and the information they may obtain in the matters they are handling for their respective clients"). Indeed, this was true even before Ms. Varlack's separation from the Firm, as she had a separate office in Brooklyn near her home and worked remotely, away from the Firm's main office in Manhattan. She typically communicated with other partners on a standing weekly call regarding **ongoing litigation** matters. *See id.* (finding that "as a practical matter" an attorney was further screened from others working on a case "because his office is physically distant in a different wing of the office from that of the attorneys working on this case"). Again, Avangrid is not and has never been a Firm client, and there would be no basis for Ms. Varlack to discuss Avangrid matters with Firm lawyers. Indeed, she did not discuss Avangrid matters with her former partners. Plaintiffs' claim that "it would be impossible to screen attorneys" at Bradford Edwards is therefore incorrect. *See* Letter at 4.

Second, Plaintiffs point to a single confidential email and attached meeting materials of Oct. 12, 2022, sent to Ms. Varlack at her work email 19 days prior to her departure from the Firm. The other lawyers at Bradford Edwards have had no access to this email, or to any of Ms. Varlack's work emails, since her departure. They could only access the email if they requested access from the IT Administrator. They have not done so, and the IT Administrator can attest to that fact. The Firm is therefore effectively "screened" from the sole confidential email about which Plaintiffs complain, and the presumption is rebutted. We also understand that Avangrid's board emails are secured, so that once sent to a board member, only that board member can access the information.

Plaintiffs' claim that, unless the Firm is disqualified, they will be "left litigating against a party with counsel who knows its innermost thoughts about this very action" is plainly wrong. Letter at 4. Plaintiffs have not met (and cannot meet) the "high standard of proof" necessary for disqualification, *Gurniak*, 995 F. Supp. 2d at 269, and there is no risk here that the trial will be tainted. Disqualification is therefore unwarranted. *Hempstead Video*, 409 F.3d at 132.

                                             Respectfully submitted,

                                             Patrick A. Bradford

Cc:     All counsel of record, via ECF