**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AVANGRID NETWORKS, INC., and
AVANGRID SERVICE COMPANY,

        Plaintiffs,

 - v. -

SECURITY LIMITS, INC. and PAULO SILVA,

        Defendants.

---

Case No.  22 Civ. 9622 (AT)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO**
**DISQUALIFY BRADFORD, EDWARDS & VARLACK LLP**
**AS COUNSEL TO DEFENDANTS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    A.   Defendants' Theft from and Extortion of Plaintiffs. ................................................ 2

    B.   Camille Joseph Varlack Co-Founds Bradford, Edwards & Varlack in 2020. ................... 3

    C.   Ms. Joseph Varlack Receives Privileged Information About This Lawsuit as a Board Member of Avangrid ................................................................................................. 4

    D.   Bradford, Edwards & Varlack Appears as Counsel for Defendants Adverse to Avangrid. 6

LEGAL STANDARD FOR DISQUALIFICATION ....................................................... 7

ARGUMENT ...................................................................................................................... 9

    A.   Disqualification Is Required Because Bradford, Edwards & Varlack Received Privileged Information From Avangrid. ........................................................................ 9

    B.   Under Rule 1.10, Ms. Joseph Varlack's Conflicts Are Imputed to All Attorneys at Bradford, Edwards & Varlack. ..................................................................................... 9

    C.   Courts Have Consistently Held That a Firm Is Disqualified By Its Attorneys' Service on an Opposing Party's Board of Directors. ................................................................. 12

    D.   The Matters Are Identical. ............................................................................... 15

    E.   Bradford, Edwards & Varlack Had Access to Avangrid's Confidential Information, and Did Not Screen Ms. Joseph Varlack. ........................................................................... 15

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Acad. Games Leagues of Am., Inc.*,
   831 F. Supp. 785 (C.D. Cal. 1993) .......................................................................14

*Berry v. Saline Mem'l Hosp.*,
   322 Ark. 182, 907 S.W.2d 736 (1995)...................................................................14

*Matter of Blackman*,
   165 A.D.3d 654, 83 N.Y.S.3d 628 (2d Dep't 2018) ..............................................14

*Chinese Auto. Distributors of Am. LLC v. Bricklin*,
   No. 07 CIV. 4113 (LLS), 2009 WL 47337 (S.D.N.Y. Jan. 8, 2009).....................17

*Emle Indus., Inc. v. Patentex, Inc.*,
   478 F.2d 562 (2d Cir. 1973).................................................................................16

*Evans v. Artek Sys. Corp.*,
   715 F.2d 788 (2d Cir. 1983).........................................................................7, 9, 19

*Filippi v. Elmont Union Free School District Board of Education*,
   722 F. Supp. 2d 295 (E.D.N.Y. 2010) ...............................................12, 13, 14, 16

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*,
   567 F.2d 225 (2d Cir. 1977).................................................................................17

*Glueck v. Jonathan Logan, Inc.*,
   512 F.Supp. 223 (S.D.N.Y. 1981) .........................................................................8

*Glueck v. Jonathan Logan, Inc.*,
   653 F.2d 746 (2d Cir. 1981).........................................................................8, 11, 12, 13

*Gov't of India v. Cook Indus., Inc.*,
   569 F.2d 737 (2d Cir. 1978).............................................................................8, 15

*Greene v. Greene*,
   47 N.Y.2d 447, 391 N.E.2d 1355 (1979)...............................................................8

*GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*,
   618 F.3d 204 (2d Cir. 2010)...................................................................................7

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
   409 F.3d 127 (2d Cir. 2005).............................................................................7, 16

*Hull v. Celanese Corp.*,
   513 F.2d 568 (2d Cir. 1975)..............................................................................8

*Huntington v. Great W. Res., Inc.*,
   655 F. Supp. 565 (S.D.N.Y. 1987) ..................................................................17

*In re Liberty Music & Video, Inc.*,
   54 B.R. 799 (Bankr. S.D.N.Y. 1985).................................................................8

*In re Mortg. & Realty Tr.*,
   195 B.R. 740 (Bankr. C.D. Cal. 1996)..............................................................14

*Panebianco v. First Unum Life Ins. Co.*,
   No. 04 CIV. 9331 (JSR), 2005 WL 975835 (S.D.N.Y. Apr. 27, 2005)...................16

*Papanicolaou v. Chase Manhattan Bank, N.A.*,
   720 F. Supp. 1080 (S.D.N.Y. 1989)...........................................................16, 17

*T. C. Theatre Corp. v. Warner Bros. Pictures*,
   113 F. Supp. 265 (S.D.N.Y. 1953) ..................................................................15

*U.S. Football League v. Nat'l Football League*,
   605 F. Supp. 1448 (S.D.N.Y. 1985).................................................................15

*United States v. Prevezon Holdings Ltd.*,
   839 F.3d 227 (2d Cir. 2016)......................................................................7, 8, 9

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.*,
   580 F.2d 1311 (7th Cir. 1978) ..........................................................................8

*William H. Raley Co. v. Superior Ct.*,
   149 Cal. App. 3d 1042, 197 Cal. Rptr. 232 (Ct. App. 1983) ................................14

**Statutes**

N.Y. Partnership Law § 60 ....................................................................................10

N.Y. Partnership Law § 62 ....................................................................................10

N.Y. Partnership Law § 121-1500 ..........................................................................10

**Other Authorities**

N.Y. R. Prof'l Conduct, Rule 1.6......................................................................10, 12

N.Y. R. Prof'l Conduct, Rule 1.7..................................................................9, 11, 14

N.Y. R. Prof'l Conduct, Rule 1.8............................................................................9

iv

N.Y. R. Prof'l Conduct, Rule 1.9.............................................................................................10, 12

N.Y. R. Prof'l Conduct, Rule 1.10................................................................................9, 11, 12, 14

N.Y. R. Prof'l Conduct, Rule 4.4............................................................................................12

N.Y. R. Prof'l Conduct, Rule 7.5..........................................................................................3, 10

## INTRODUCTION

Camille Joseph Varlack is one of three name partners of Defendants' counsel, Bradford, Edwards & Varlack LLP, and a Director on the Board of Directors of Plaintiffs' parent company Avangrid Inc. As a Director at Avangrid, Ms. Joseph Varlack serves as a member of the Audit Committee and has received detailed and privileged updates about this very case, as well as Avangrid's other disputes with Plaintiffs. Avangrid provided those updates to Ms. Joseph Varlack at her Bradford Edwards & Varlack email address. Bradford Edwards & Varlack, now counsel for Defendants, possesses privileged communications about this case. Under the law, that undisputed fact mandates disqualification here, regardless of how that information may have been used.

Defendants' pre-motion letter does not change this result. While Defendants insist that Ms. Joseph Varlack is on leave for government service, they confirm that Ms. Joseph Varlack retains a capital account at the firm, demonstrating she still has a financial interest in its success and presumably may return to practice at the firm. Given that Bradford Edwards & Varlack has just a handful of attorneys—five others are on its website—her role and interest in the firm are significant. The firm, of course, still uses her name; under the Rules of Professional Conduct, this use means she retains an interest during her public service. Defendants' assurances about access to the privileged information do nothing to lessen the risk. They say that Bradford Edwards & Varlack personnel would have to ask an "independent information technology administrator" to access her emails, but this simply confirms that the emails remain in the custody and control of Bradford Edwards & Varlack. They mention no formal screen nor any established procedure to do—not that any such screen would suffice here, and they say nothing about access to any Avangrid documents she may have saved on firm shared drives or document

1

management systems. Nor do they address the risk of water-cooler chat, documents left around the office, and the like.

It is axiomatic that attorneys associated in a firm are presumed to share information. Parties, like Plaintiffs here, are not required to prove improper *access* to privileged information, because only the attorney sought to be disqualified knows whether that has occurred, will occur or could occur. All that is required is undue risk, and that is plainly present here.

In sum, while Avangrid does not make this motion lightly, this case is not a close call. Of all the lawyers in New York City, Defendants chose to hire the one that had a name partner who is an Avangrid Board member and who received privileged information about this very case. Disqualification is necessary here.

## BACKGROUND

### A.      Defendants' Theft from and Extortion of Plaintiffs.

This motion arises in the context of highly contentious disputes between Plaintiffs and Mr. Silva and his company SLI. As set forth at length in the Complaint (Doc. 1), SLI worked as a small subcontractor to two contractors on an Avangrid project; the relationship with the second one, Unlimited Technology, Inc., ended contentiously. In that capacity, SLI signed agreements, including confidentiality and ownership of property agreements, with Unlimited Technology, Inc., agreed to abide by the terms of the prime contract, and granted an irrevocable royalty-free license to certain software to Avangrid and those working on its behalf. As the subcontract came to an end, Defendants decided to take or retain an email server that contractors and subcontractors used to coordinate scheduling matters that belonged to Avangrid even though he had no right to keep it, proceeded to misuse its contents, and then threatened to accuse Plaintiffs of assorted and unspecified wrongdoing in public and to government regulators—unless they are paid off by Plaintiffs.

In addition to this dispute, SLI previously filed an action alleging RICO and other claims against Avangrid Networks, Inc., Avangrid, Inc., and others seeking, inter alia, treble damages in an amount of not less $110 million in damages, but SLI then dismissed the case prior to any responsive pleading being filed (see Doc. 3). And Avangrid filed an action against Silva and SLI for defamation, tortious interference and prima facie tort in New Mexico that is currently pending before the New Mexico Court of Appeals.

**B.      Camille Joseph Varlack Co-Founds Bradford, Edwards & Varlack in 2020.**

Bradford, Edwards & Varlack was founded by its three name partners—Patrick A. Bradford, Denver G. Edwards, and Camille Joseph Varlack—in late 2020. (Declaration of Joseph M. Sanderson ("Sanderson Decl.") Ex. 1 (*American Lawyer* Article).) It is a boutique law firm; its entire founding partnership appeared in the firm's name. (*Id.*) Since then, it has added two of-counsel attorneys and, last week, one partner, bringing the total number of attorneys listed on its website to five. (Sanderson Decl. Ex. 2 (press release announcing hiring of two counsel) & Ex. 3 (May 4, 2023 press release announcing hiring of new partner John Kofi Osei-Tutu).)

Ms. Joseph Varlack was an active partner of Bradford, Edwards & Varlack from its founding until she entered government service in December 2022. (Sanderson Decl. Ex. 4 (Mayor's Office Press Release).) Since then, she has apparently been on leave from the firm, but—as Defendants confirm—she retains a capital account at the firm and may be allowed to return from her leave upon a vote by the current equity partners. (Doc. 40 at 2.) Her name remains in the firm name, which indicates that the firm holds itself out as having an "active[] and regular[]" relationship for the practice of law with her and derives goodwill from use of her name. (N.Y. R. Prof'l Conduct, Rule 7.5(b)(4).) While Defendants represent that Ms. Joseph Varlack will not share in fees from this action (Doc. 40 at 3), she has not been bought out as a

partner, so she inevitably financially benefits from fees from this action being used to cover firm costs that might otherwise come out of her capital account.

Defendants have confirmed that Ms. Joseph Varlack's email address remains under the firm's control and that the "independent information technology administrator" is directed by Managing Partner Denver G. Edwards. (Doc. 40 at 3.) Mr. Edwards presumably *does* have a financial interest in fees derived from this case.[1] Defendants did not discuss other firm systems, such as shared drives or document management systems or their management of hard-copy documents, even though on at least one occasion Ms. Joseph Varlack asked for board materials to be sent in hard copy to Bradford Edwards & Varlack's offices. (Declaration of Thomas Weir ("Weir Decl.") Ex. 1.)

## C.    Ms. Joseph Varlack Receives Privileged Information About This Lawsuit as a Board Member of Avangrid.

Ms. Joseph Varlack currently serves on the Board of Directors for Plaintiffs' 100% owner, Avangrid, Inc. (Weir Decl. ¶ 2.) Ms. Joseph Varlack, who had worked with Denver Edwards of Bradford Edwards & Varlack on sourcing co-investors for Avangrid projects in 2021 (*id.* ¶ 3), entered into discussions with Avangrid in May 2022, was formally nominated as a Board of Directors candidate in June 2022, and was elected as a Director on the Board of Directors and appointed as Member of the Audit Committee on July 20, 2022. (*Id.* ¶ 4.) The Audit Committee is responsible for oversight of Avangrid's risk, claims, and litigation. (*Id.* ¶ 5.) Members of the Audit Committee receive regular litigation and compliance reports, including updates on Avangrid's litigation, internal investigations, and regulatory affairs. (*Id.*) And the

---

[1] Mr. Bradford also discussed soliciting co-investors for an Avangrid project in 2021, meaning that two of the three name partners of BE&V have had some relationship with Avangrid, while the third is now representing parties adverse to it.

4

Audit Committee receives updates that are more detailed than those that go to the full Board. (*Id.*)

Until November or December of 2022, Ms. Joseph Varlack listed her Bradford, Edwards & Varlack email address for Avangrid communications and received Audit Committee updates at that address. (Weir Decl. ¶¶ 6, 10 Ex. 1.) She also asked that her Bradford Edwards & Varlack's Director of Operations, Sherry Chong, be copied on communications between Avangrid and her. (*Id.*) Even while Ms. Joseph Varlack has been on leave from the firm for public service, Ms. Chong has continued to communicate with Avangrid regarding Ms. Joseph Varlack's Board service. (Weir Decl. Ex. 2)

Avangrid has consistently provided updates to the Audit Committee regarding its various disputes with Defendants. (*Id.* ¶ 7.) For example, on October 12, 2022, at a time when Ms. Joseph Varlack was still a full-time partner at Bradford, Edwards & Varlack, Avangrid's Deputy General Counsel & Assistant Corporate Secretary sent meeting materials to Ms. Joseph Varlack's Bradford, Edwards & Varlack email address, cvarlack@bradfordedwards.com. (*Id.* ¶ 8.[2]), in advance of an October 14, 2022, meeting of the Audit and Compliance committees. The materials contained information marked "confidential," including a privileged litigation update from Avangrid's General Counsel and attorney work product discussing this action, as well as other litigation with Defendants. (*Id.*)

During the October 14, 2022 Audit Committee Meeting, which Ms. Joseph Varlack attended, Avangrid's General Counsel provided an update to the Committee concerning significant litigation matters that the company was involved with, including about this action and

---

[2] Because those materials are privileged, Plaintiffs cannot provide a copy of them, but are prepared to submit them for *in camera* review if doing so would be helpful to this Court's resolution of this motion.

other litigation with Defendants, in addition to the written materials. (*Id.* ¶ 9.) Ms. Joseph

Varlack also received a number of extensive reports from Avangrid's auditors and compliance

department, as well as discussion of Avangrid's corporate governance. (*Id.* ¶ 11.) She also

received litigation updates regarding Avangrid's proposed acquisition of PNM Resources, Inc.,

which Defendants appeared at a public comment session in New Mexico to oppose. (*Id.* ¶ 12.)

The litigation and compliance update contained confidential information, attorney-client

privileged communications, and attorney-work product. (*Id.* ¶ 9.) Throughout this time and until

November or December 2022, Ms. Joseph Varlack received these materials at her Bradford,

Edwards & Varlack email address, and even after that time, Ms. Chong continued to receive

Board-related communications to assist Ms. Joseph Varlack. (*Id.* ¶ 10 & Ex. 2)

As set out in the Complaint (Doc. 1), this action involves, among other things,

Defendants' extortionate threats to make (false) statements, including to government regulators,

about Avangrid's internal controls, compliance, and corporate governance.

**D.      Bradford, Edwards & Varlack Appears as Counsel for Defendants Adverse to
         Avangrid.**

On March 16, 2023, Bradford Edwards & Varlack entered an appearance for Defendants

Security Limits, Inc. and Paulo Silva following this Court's granting prior counsel's request to

withdraw. (Docs. 36 and 38.) Once they learned the identity of the new counsel, Plaintiffs

immediately investigated their access to Plaintiffs' confidential information and asked Ms.

Joseph Varlack to inquire as to whether Bradford Edwards & Varlack would withdraw due to her

service on Avangrid Inc.'s Board of Directors and its Audit Committee. (Weir Decl. ¶ 13.)

Ms. Joseph Varlack told Plaintiffs that her partners would not agree to withdraw. (*Id.*)

## LEGAL STANDARD FOR DISQUALIFICATION

"The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted). While motions to disqualify are not granted lightly, they must be granted where "an attorney's conduct tends to taint the underlying trial." *Id.* "One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client." *Id.* at 133.

The test for disqualification in this Circuit depends on whether the conflict is concurrent or successive. In a concurrent conflict—in which an attorney simultaneously represents one existing client in a matter adverse to another existing client, *GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010)—the representation is "prima facie improper," so the attorney must show there is "no actual *or apparent* conflict in loyalties or diminution in the vigor of [their] representation." *Hempstead Video* 409 F.3d at 133. In the case of a successive conflict, disqualification is required where "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).

Showing prejudice does not require proof of disclosure or use of privileged information. It is a "well established principle that, in order to grant a disqualification motion, a court should not require proof that an attorney actually had access to or received privileged information while

representing the client in a prior case." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978). "Such a requirement would put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether." *Id.*; *accord Prevezon Holdings Ltd.*, 839 F.3d at 241.

While framed in terms of representation, the Second Circuit has applied similar principles to other types of conflicts of interest: even where "we have a divergence from the more usual situation of the lawyer switching sides to represent an interest adverse to his initial representation," similar principles of risk of access to privileged information about the matter at hand apply. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975) (disqualifying law firm based on its client being a lawyer who had worked on a matter in which the same firm was litigating against that lawyer's client). The Second Circuit has also held that disqualification can be required where relevant relationship is not "in all respects that of attorney and client"; rather, the Court asked "whether there exist sufficient aspects of an attorney-client relationship 'for purposes of triggering inquiry into the potential conflict…'" *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748-49 (2d Cir. 1981) (quoting *Glueck v. Jonathan Logan, Inc.*, 512 F.Supp. 223, 227 (S.D.N.Y. 1981)); *see also Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317-20 (7th Cir. 1978) (noting that signed retention letter was not determinative to existence of conflict). Courts have thus frequently disqualified based on a personal interest conflict where a lawyer owes a party fiduciary duties of trust and confidence, even where that fiduciary relationship is not an attorney-client relationship. *See e.g.*, *In re Liberty Music & Video, Inc.*, 54 B.R. 799, 804 (Bankr. S.D.N.Y. 1985) (fiduciary duty under partnership law created disqualifying conflict); *Greene v. Greene*, 47 N.Y.2d 447, 452, 391 N.E.2d 1355, 1358 (1979)

(partners' fiduciary duties precluded them from representing a plaintiff against their former partner).

"[W]here, as here, the *Evans* factors are satisfied, trial taint is established and no further analysis is necessary." *Prevezon.*, 839 F.3d at 241. "Even if the *Evans* factors were not satisfied, however," the Court may find trial taint based on all of the circumstances. *Id.*

## ARGUMENT

### A.   Disqualification Is Required Because Bradford, Edwards & Varlack Received Privileged Information From Avangrid.

As a result of Ms. Joseph Varlack's role as a director and fiduciary of Avangrid, Bradford, Edwards & Varlack is in actual possession of privileged information about this precise case (as well as other disputes with Mr. Silva and SLI). The Rules of Professional Conduct and Second Circuit precedent reflect the presumption that lawyers share information, and any screening to try to mitigate that conflict must be done strictly at the outset. Ms. Joseph Varlack remains involved in the firm, but even if her leave were sufficient to make this a successive rather than concurrent conflict, it is undisputed that Bradford, Edwards & Varlack possesses Avangrid privileged information and did not timely implement a screen even were an effective one possible in a firm the size of Bradford, Edwards & Varlack. Avangrid thus faces a substantial risk of its privileged information being used against it, which creates sufficient trial taint to require disqualification.

### B.   Under Rule 1.10, Ms. Joseph Varlack's Conflicts Are Imputed to All Attorneys at Bradford, Edwards & Varlack.

Under Rule 1.10(a) of the New York Rules of Professional Conduct, "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9, except as otherwise provided therein." Similarly, under Rule 1.10(b), "When a lawyer has terminated an association

with a firm, the firm is prohibited from thereafter representing a person with interests that the firm knows or reasonably should know are materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm if the firm or any lawyer remaining in the firm has information protected by Rule 1.6 or Rule 1.9(c) that is material to the matter."

Here, Ms. Joseph Varlack remains "associated in a firm" with Bradford, Edwards & Varlack. To start, the firm holds itself out as associated with Ms. Joseph Varlack—her name is right there in the name of the firm. That is especially significant given her public service, because the firm is prohibited from using her name unless she is "actively and regularly practicing law as a member of the firm." N.Y. R. Prof'l Conduct, Rule 7.5(b)(4). The firm is also prohibited from holding her out as a partner of the firm—such as by including her name in the firm name—when she is neither associated with the firm nor retired from the practice of law. N.Y. R. Prof'l Conduct, Rule 7.5(b)(iii), (c). Defendants have similarly confirmed that Ms. Joseph Varlack retains a capital account at the firm, meaning that she has not withdrawn as a partner and the partnership continues. *See generally* N.Y. Partnership Law §§ 60, 62, 121-1500(d).[3] She has not been bought out as part of a dissolution. Her capital remains at risk if the firm has losses, even if she is excluded from a share of profits; there were only two (and as of last week, three) partners to share the firm's overhead and the cost of repaying any debt financing that the firm may have,[4] so this lawsuit may meaningfully affect Ms. Joseph Varlack's

---

[3] Bradford, Edwards & Varlack LLP is organized under the laws of the State of New York.
[4] Although it is omitted from their web bios, even as Mr. Bradford and Mr. Edwards list numerous "prior affiliations", Mr. Bradford, Mr. Edwards and Ms. Joseph Varlack were formerly associated with Pierce Bainbridge, a firm that was publicly reported to have disintegrated due to, among other things, significant debts that had financed its operations. *See generally* Ryan Boysen, *Pierce Bainbridge Funder Says Firm Defaulted on Debt*, Law360, June 1, 2020,

capital account. And Ms. Joseph Varlack appears to continue to use Sherry Chong at Bradford Edwards & Varlack to help her with her Board commitments too. (Weir Decl. ¶ 10 & Ex. 2.) That reflects a continuing association with the firm; indeed, it reflects a continuing legal status as a partner while on leave.

Ms. Joseph Varlack herself would be prohibited from representing Defendants adverse to Avangrid. Most obviously, because Ms. Joseph Varlack owes Avangrid fiduciary duties as a Director, her "personal interests" would create "a significant risk that [her] professional judgment" would be "adversely affected." N.Y. R. Prof'l Conduct, Rule 1.7(a)(2). Conflicting fiduciary duties is a classic conflict—she would be under an ethical obligation to Avangrid to disclose Defendants' confidences and an ethical obligation to Defendants to disclose Avangrid's confidences that cannot be reconciled. *See* Comment 10 (identifying employment or related business interests as disqualifying conflicts). As addressed below, lawyer-directors also implicate Rule 1.7(a)(1)'s prohibition on conflicting representations, because their status as attorneys frequently means that they are entrusted with legal strategy issues. That is the case here; Ms. Joseph Varlack's status as an attorney made her well-suited to exercise oversight over litigation, investigations, and compliance on the Audit Committee. Further, the Second Circuit has emphasized that a formal attorney-client relationship is not required to trigger Rule 1.7(a)(1) and looks to the "the nature of the services rendered." *Glueck*, 653 F.2d at 749. Here, Ms. Joseph Varlack's role at Avangrid—a role that inevitably uses her legal knowledge and includes a fiduciary duty—meets the Second Circuit's test as set out in *Glueck*. As such, Rule 1.10(a) prohibits her law partner from representing parties adverse to Avangrid too.

---

https://www.law360.com/articles/1278645/pierce-bainbridge-funder-says-firm-defaulted-on-debt.

Similarly, even if Ms. Joseph Varlack's leave of absence were sufficient to make her association "terminated" under Rule 1.10(b), Bradford, Edwards & Varlack would still be prohibited from representing Defendants because it indisputably possesses information related to the representation that is covered by professional duties of confidentiality. First, Ms. Varlack's Board role and accompanying fiduciary duty is sufficiently analogous to an attorney-client relationship to give rise to professional duties of confidentiality under what is now Rule 1.6(a) and 1.9(c) of the Rules of Professional Conduct. *See Glueck*, 653 F.2d at 749. To state the obvious, the reason why Avangrid was comfortable sending confidential and privileged information to a lawyer's law firm email address was because it was a law firm and under professional obligations of confidentiality. And Ms. Joseph Varlack emailed back using an email signature that identified her as a partner of Bradford Edwards & Varlack and a footer that the message "is confidential and may contain information protected by the attorney-client privilege or work product doctrine." (Weir Decl. Ex. 1.) Second, even if it were not, Rules 1.6(c) and 4.4(b) impose on all attorneys a duty to protect confidential information that comes into their possession from unauthorized access, so Bradford, Edwards & Varlack's possession of indisputably privileged records imposes duties on it regardless.

## C.   Courts Have Consistently Held That a Firm Is Disqualified By Its Attorneys' Service on an Opposing Party's Board of Directors.

Courts in this circuit and elsewhere have consistently held that an attorney's service as an officer or director of an opposing party leads to an imputed conflict for the attorney's firm that is presumptively disqualifying. In *Filippi v. Elmont Union Free School District Board of Education*, for example, a law firm representing the plaintiff was disqualified because an associate of the firm served on the Board of the defendant. 722 F. Supp. 2d 295, 304 (E.D.N.Y. 2010). The court observed, "the issue [in a disqualification case] is not whether [counsel's]

relationship to [the moving party] is in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship 'for purposes of triggering inquiry in to the potential conflict involved in [counsel's] role as plaintiff's counsel in this action.'" *Id.* (quoting *Glueck*, 653 F.2d at 749-50). Applying that standard, the *Filippi* court explained that lawyers serving on Boards owe fiduciary duties and it is particularly likely that the organization will share confidential information about contemplated litigation while expecting the lawyer to maintain its confidences. *Id.* at 305.

Much as Ms. Joseph Varlack is a member of Avangrid's Board and ultimately charged with overseeing Avangrid, the attorney in *Filippi* was "a member of the Board of Education— hence, a member of the defendant in this action." *Id.* And "she undeniably stands in a fiduciary relationship to the Board, much like an attorney's relationship to its client," much as Ms. Joseph Varlack does. *Id.* "Furthermore, as a fiduciary to the Board, it can be presumed that Ferrigno was privy to confidential discussions and involved in the Board's decisionmaking, including decisionmaking with respect to" the legal claims at issue and her "discretion and confidentiality was expected with respect to such sensitive matters." *Id.* Again, that is exactly the case here— Ms. Joseph Varlack was specifically charged with oversight of litigation and received presentations and information about this case during her association with Bradford, Edwards & Varlack. As *Glueck* notes, an attorney-client relationship is not the test, but one can easily arise in the Board service in any event—lawyers on Boards that are supervising legal disputes are plainly called upon to exercise their professional judgment and other members of the Board may rely on their legal expertise too. And Avangrid was comfortable sending privileged and confidential information to Ms. Joseph Varlack at her firm email address precisely because she

was a lawyer and her firm was a law firm, both having confidentiality obligations that her partners' subsequent representation of Defendants threatens.

Other courts have similarly recognized that lawyers serving as directors can result in imputed conflicts sufficient to require disqualification. The New York Appellate Division has specifically endorsed *Filippi* and held that while a hospital Board member's board service "did not constitute a traditional attorney-client relationship, there existed 'sufficient aspects of such relationship'—notably the fiduciary duty owed by Glassman to the hospital—to trigger inquiry into the potential conflict arising from Fox Rothschild's simultaneous representation of Williams in litigation against the hospital." *Matter of Blackman*, 165 A.D.3d 654, 655, 83 N.Y.S.3d 628, 629 (2d Dep't 2018) (noting the attorney-board member had access to hospital confidential information regarding the subject-matter of the litigation and ordering disqualification). The Supreme Court of Arkansas, for example, has specifically held that Board service results in a conflict under Rule 1.7 that is imputed under Rule 1.10. *Berry v. Saline Mem'l Hosp.*, 322 Ark. 182, 186-87, 907 S.W.2d 736, 739 (1995) (cited favorably under New York law in both *Filippi* and *Blackman*). A number of other cases impute board service conflicts to an entire firm and require disqualification too. *Allen v. Acad. Games Leagues of Am., Inc.*, 831 F. Supp. 785, 790 (C.D. Cal. 1993); *In re Mortg. & Realty Tr.*, 195 B.R. 740, 753 (Bankr. C.D. Cal. 1996); *William H. Raley Co. v. Superior Ct.*, 149 Cal. App. 3d 1042, 1049, 197 Cal. Rptr. 232, 237 (Ct. App. 1983). In short, courts have consistently recognized the obvious point that a board member's access to highly sensitive information, including about litigation and other vulnerabilities of a company, presents an obvious conflict of interest, and under Rule 1.10, attorneys are presumed to share information within a firm.

14

**D.      The Matters Are Identical.**

The "substantial relationship" criterion here is straightforward. When assessing a "substantial relationship," the question is "whether facts which were necessary to the first representation are necessary to the present litigation." *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985). That is obviously satisfied when they are the same case. Ms. Joseph Varlack indisputably received information about this exact case and Avangrid's strategy for it (and for its other disputes with Defendants) while a partner of Bradford, Edwards & Varlack. (Weir Decl. ¶¶ 8-9.) Indeed, she received it at her Bradford, Edwards & Varlack email address. (*Id.*)

**E.      Bradford, Edwards & Varlack Had Access to Avangrid's Confidential Information, and Did Not Screen Ms. Joseph Varlack.**

Parties seeking disqualification do not need to prove actual access to confidential or privileged information. *Gov't of India*, 569 F.2d at 740. There is a *presumption* of sharing of confidential information when matters are substantially related (let alone the same):

> The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

*T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268–69 (S.D.N.Y. 1953).).

In this instance, it cannot be disputed that Bradford, Edwards & Varlack has actual access to privileged information about this case, including an Audit Committee report discussing Avangrid's strategy in this exact litigation. (Weir Decl. ¶¶ 8-9.) The prejudice is thus even greater than in the ordinary case that relies on the presumption alone: Avangrid is left to hope that lawyers who owe fiduciary duties to an opposing party will exercise perfect self-restraint regarding information and documents about Plaintiffs' strategy in this case that are assuredly in

15

their firm's possession and control. Indeed, Avangrid has no idea whether its information or Ms. Joseph Varlack's association with Avangrid played a role in her firm's decision to take the case. As the Second Circuit has explained: "A lawyer's good faith, although essential in all his professional activity, is, nevertheless, an inadequate safeguard when standing alone." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). Indeed, "[e]ven the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it into a telling advantage in the subsequent litigation." *Id.* The rule is protective, to prevent irremediable taint from occurring in the first place.

There is a strong presumption that attorneys associated in a firm share confidences. *E.g.*, *Hempstead Video*, 409 F.3d at 133; *Filippi*, 722 F. Supp. 2d at 307 (board service conflict). While rebuttable under certain circumstances by prompt screening, Defendants' pre-motion letter confirms that no formal screening occurred here, even if screening were possible within a close-knit three-partner law firm.

"To prevent one lawyer's conflicts from being imputed to his firm, the firm must immediately, and effectively, screen that lawyer from any contact with any relevant cases, such that there can be no doubts as to the sufficiency of these preventive measures." *Panebianco v. First Unum Life Ins. Co.*, No. 04 CIV. 9331 (JSR), 2005 WL 975835, at *3 (S.D.N.Y. Apr. 27, 2005) (internal quotation marks omitted). "When the wall has been put into place a court generally appraises the wall and decides whether its structure has assured impenetrability and that the presumption of shared knowledge in a firm is thereby successfully rebutted." *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1087 (S.D.N.Y. 1989). Ethical walls will be rejected if they are "too porous" or "not timely erected." *Id.* "[I]n the course

16

of litigation both scuttlebutt and official information travel quickly by word of mouth," and courts have doubted that "any [ethical] walls, which are meant to be preemptive, can ever function effectively when erected in response to a motion, and not prior to the arising of the conflict." *Id.*; *accord Chinese Auto. Distributors of Am. LLC v. Bricklin*, No. 07 CIV. 4113 (LLS), 2009 WL 47337, at *4 (S.D.N.Y. Jan. 8, 2009). A mere denial that information was shared is not a substitute for an effective ethical wall. *Huntington v. Great W. Res., Inc.*, 655 F. Supp. 565, 576 (S.D.N.Y. 1987).

Here, Bradford, Edwards & Varlack has not stated that it has had a wall in place to limit disclosure of the information provided to Ms. Joseph Varlack and her assistant, which alone is enough to prevent it from rebutting the presumption that Avangrid's confidences were shared by Ms. Joseph Varlack to her partners. Instead, it has claimed that it has an "independent information technology administrator" that will make sure that no-one accesses Ms. Joseph Varlack's email account unless the firm's managing partner says otherwise. (Doc. 40 at 2.) But a non-lawyer employee cannot ensure a lawyer's compliance with their ethical duties. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 234 (2d Cir. 1977) ("The principle that a lawyer cannot delegate his fiduciary duties to another in an effort to avoid its strictures or to avoid responsibility for the manner in which they are undertaken is settled law."). The firm's managing partner, moreover, is not screened from this suit, so he has a duty that conflicts with the firm's duty to protect Avangrid's confidences. And the firm's other attorneys have access to their own emails; it is entirely possible that Ms. Joseph Varlack would have forwarded an email to one of them to solicit their advice on a Board matter.

Defendants, moreover, say absolutely nothing about other forms of screening. Did Ms. Joseph Varlack save Avangrid documents to any firm shared drives or document

management systems? They do not say, which suggests that they did not instruct Ms. Joseph Varlack to avoid using shared drives or document management systems for her board responsibilities. That means that if Defendants' counsel search for "Avangrid" on their shared drive to try find their own strategy memoranda, they might easily open and see an Avangrid strategy document instead. Did Ms. Joseph Varlack print out board materials on shared printers or leave board materials on her desk, visible to her partners? Again, they do not say, suggesting no procedures were in place to prohibit it. Did Ms. Joseph Varlack participate in videoconferences or telephone conferences related to her Board work where her partners could hear her? Again, they do not say. Did the topic of her Board service ever come up in firm management meetings? They do not say. All this confirms that there were no formal screening mechanisms in place and the firm is presumed to have had access to all the information she had access to.

As for financial screening, Defendants say that Ms. Varlack will not share in profits from fees. (Doc. 40 at 2-3.) But they concede that her partnership capital account still exists and still has a positive value, which in a small law firm may be substantially at risk based on the firm's financial performance and ability to pay any loans it may have taken out to finance its operations.

This is not the circumstance where a Tokyo partner of a huge global law firm stumbles into a representation adverse to a company that has a Madrid partner. Bradford, Edwards & Varlack is a close-knit law firm that had three partners (including Ms. Joseph Varlack) until a fourth joined last week. Especially in close-knit firms, people talk about what they are doing. People leave copies of papers around the office. Shared drives tend to have shared access. If screening is even possible in a small, boutique firm like that, and if the firm wanted to preserve

18

the other attorneys' ability to represent clients adverse to Avangrid, it should have implemented a screen the moment that Ms. Joseph Varlack joined the Avangrid Board.

The whole firm is presumed to have had access to the Avangrid confidences in Ms. Joseph Varlack's possession, and that presumption is not close to being rebutted. Accordingly, the *Evans* factors are satisfied and disqualification is required; even if they were not, the obvious risk of access to Plaintiffs' privileged information that Defendants' counsel possesses would weigh strongly in favor of a finding of trial taint regardless.

## CONCLUSION

For the foregoing reasons, this Court should enter an order disqualifying Bradford, Edwards & Varlack LLP as counsel for Defendants.

Dated: May 9, 2023                   Respectfully submitted,

                                      STEPTOE & JOHNSON LLP


                                      By: /s/ Joseph M. Sanderson
                                      Robert W. Mockler
                                      Joseph M. Sanderson
                                      1114 Avenue of the Americas
                                      New York, NY 10036
                                      rmockler@steptoe.com
                                      josanderson@steptoe.com
                                      (212) 506-3900

                                      -and-

                                      Thomas Watson (pro hac vice)
                                      633 West Fifth Street, Suite 1900
                                      Los Angeles, CA 90071
                                      twatson@steptoe.com
                                      (213) 439-9417

                                      Counsel for Plaintiffs AVANGRID
                                      NETWORKS, INC.; and AVANGRID
                                      SERVICE COMPANY