UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVANGRID NETWORKS, INC., and AVANGRID SERVICE COMPANY,<br><br>　　　　　　　　　　Plaintiffs,<br><br>- v. –<br><br>SECURITY LIMITS, INC. and PAULO SILVA, Defendants.<br><br>　　　　　　　　　　Defendants. | Case No. 22 Civ. 9622 (AT) |

**DEFENDANTS SECURITY LIMITS, INC. AND PAULO SILVA'S OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY BRADFORD EDWARDS & VARLACK LLP AS COUNSEL TO DEFENDANTS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................. 3

    A.  Avangrid Appointed Ms. Varlack to the Board of Directors Solely in Her Individual Capacity ............................................................................................................................... 3

    B.  Bradford Edwards' Information Technology Infrastructure ............................................... 3

    C.  Means Avangrid Used to Share Confidential Information with Ms. Varlack ..................... 4

    D.  Ms. Varlack's Separation From Bradford Edwards ............................................................ 5

ARGUMENT ....................................................................................................................................... 5

    I.    LEGAL STANDARD ................................................................................................... 5

    II.   BRADFORD EDWARDS SHOULD NOT BE DISQUALIFIED ............................. 8

CONCLUSION .................................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*
    827 F. Supp. 2d 341 (S.D.N.Y. 2011) .............................................................................. 9, 10

*DeFazio v. Wallis*
    459 F. Supp. 2d 159 (E.D.N.Y. 2006) .................................................................................. 7

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*
    722 F. Supp. 2d 295 (E.D.N.Y. 2010) .................................................................................. 6

*Gov't of India v. Cook Indus., Inc.*
    569 F.2d 737 (2d Cir. 1978) ............................................................................................... 10

*Gurniak v. Emilsen*
    995 F. Supp. 2d 262 (S.D.N.Y. 2014) ......................................................................... 5, 6, 13

*Gurvey v. Cowan, Liebowitz & Latman, PC*
    2014 U.S. Dist. LEXIS 163136, at *8 (S.D.N.Y. Nov. 20, 2014) ......................................... 5

*Hempstead Video, Inc. v. Vill. of Valley Stream*
    409 F.3d 127 (2d Cir. 2005) ....................................................................................... 5, 6, 7, 8

*In re Air Cargo Shipping Servs. Antitrust Litig.*
    2016 U.S. Dist. LEXIS 22228, at *102 (E.D.N.Y. Feb. 23, 2016) ........................................ 9

*Jose Luis Pelaez, Inc. v. McGraw-Hill Global Educ. Holdings LLC*
    366 F. Supp. 3d 567 (S.D.N.Y. 2019) .................................................................................. 6

*Montague v. Poly Prep Country Day Sch.*
    2022 U.S. Dist. LEXIS 98075, at *9 (E.D.N.Y. 2022) ..................................................... 7, 8

*Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*
    325 F. Supp. 2d 270 (S.D.N.Y. 2004) ................................................................................ 12

*Paretti v. Cavalier Label Co.*
    722 F. Supp. 985 (S.D.N.Y. 1989) ..................................................................................... 10

*Reilly v. Computer Assocs. Long-Term Disability Plan*
    423 F. Supp. 2d 5 (E.D.N.Y. 2006) ....................................................................... 7, 8, 12, 13

*Renz v. Beeman*
    1989 U.S. Dist. LEXIS 1784, at *23 (N.D.N.Y. Feb. 21, 1989) ..................................... 8, 13

*Sommer v. Aronow*
    No. 95-cv-9230, 1998 WL 85748, at *3 (S.D.N.Y. 1998) ................................................. 11

*Twin Labs., Inc. v. Weider Health & Fitness*
    1989 WL 49368 (S.D.N.Y. May 4, 1989) ............................................................................ 6

*U.S. Football League v. Nat'l Football League*
  605 F. Supp. 1448 (S.D.N.Y. 1985) ...................................................................................... 6

*U.S. v. Prevezon*
  839 F.3d 227 (2d Cir. 2016) ............................................................................................... 10

Defendants Security Limits, Inc. and Paulo Silva (together, the "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs Avangrid Networks, Inc. and Avangrid Service Company's (together, the "Plaintiffs") motion to disqualify Bradford Edwards & Varlack LLP as counsel to Defendants ("Motion to Disqualify").

## INTRODUCTION

Plaintiffs' Motion to Disqualify Bradford Edwards & Varlack LLP ("Bradford Edwards" or the "Firm") in connection with their ongoing litigation against Defendants turns on Ms. Camille Varlack's receipt of an email from Avangrid, Inc. on October 12, 2022 at her Firm email address that purportedly contained a "confidential" litigation summary of the litigation. Ms. Varlack was a newly-appointed member of the board of directors of Avangrid, Inc. ("Avangrid"), Plaintiffs' parent company, and was an equity partner at the Firm when she received the email. Plaintiffs contend that Ms. Varlack must have shared the contents of the October 12, 2022 email with her former partners, Patrick A. Bradford and Denver G. Edwards, because partners in small firms are presumed to share information. Plaintiffs do not submit an affidavit or sworn declaration from Ms. Varlack to support their allegations, even though Ms. Varlack is in the best position to describe whether she shared the contents of the October 12, 2022 email – or any other Avangrid confidential information – with Messrs. Bradford and Edwards or other employees of the Firm. Instead, Plaintiffs rely on a declaration of Thomas Weir, a senior counsel at Avangrid, who is removed from the facts and circumstances of Avangrid's October 12, 2022 email to Ms. Varlack, to compile random statements in an attempt to transform Plaintiffs' speculative musings into a manufactured conflict of interest where none exists.

In contrast to Plaintiffs' unsubstantiated assertions and speculation, Defendants rebut Plaintiffs' motion with sworn declarations and statements of fact. The only way that the subject

1

matter of the litigation summary could have been shared with other members of the Firm is if (1) Ms. Varlack told her former Partners about the litigation summary; (2) Ms. Varlack downloaded the litigation summary to a local drive of her computer and stored it in the Firm's document management system, which is open to all Firm personnel; or (3) Bradford Edwards personnel overcame the Firm's two-factor authentication protocol and surreptitiously accessed Ms. Varlack's email account.

Bradford Edwards submits sworn declarations demonstrating that none of these scenarios took place – Ms. Varlack did not share **any** information about Avangrid with Mr. Bradford or Mr. Edwards or any employee at the Firm; after a diligent search, neither Sherry Chong, Director of Operations, nor the Firm's outsourced IT Administrator uncovered any evidence that Ms. Varlack saved the confidential litigation summary (or any other Avangrid documents) in the Firm's document management system or a private subfolder on the same system; and the Firm uncovered no evidence that any Bradford Edwards employee evaded the Firm's two-factor authentication protocol and accessed Ms. Varlack's email account either before or after her withdrawal from the Firm on October 31, 2022.

Each litigant is empowered to select counsel of his or her choice barring a conflict of interest that risks tainting the trial. Plaintiffs' Motion to Disqualify seeks to deny Defendant Paulo Silva's right to choose his counsel despite Plaintiffs' failure to show that any person associated with Bradford Edwards received the purported confidential litigation summary, or any confidential Avangrid information whatsoever. Plaintiffs have failed to meet their burden and their Motion to Disqualify must fail.

**STATEMENT OF FACTS**

### A. Avangrid Appointed Ms. Varlack to the Board of Directors Solely in Her Individual Capacity

Avangrid appointed Ms. Varlack to its board on or about August 5, 2022. Ms. Varlack was an equity partner at the Firm[1] when Avangrid nominated her to its board of directors. The Firm did not represent Avangrid or any of its subsidiaries in any capacity before, during, or after Ms. Varlack's nomination. Ms. Varlack's service on the Avangrid board of directors is solely in her individual capacity, and wholly unrelated to her role as a former partner in the Firm. The Firm receives no pecuniary or other benefit from Ms. Varlack's directorship with Avangrid.

### B. Bradford Edwards' Information Technology Infrastructure

Bradford Edwards employs an independent information technology administrator ("IT Administrator") to manage its information technology function. The Firm has structured its information technology function so that **no employee** can access another employee's email account. A Firm employee would only be able to see another employee's email if: (i) that employee intentionally shared his or her email with others, or (ii) an equity partner authorized the IT Administrator to provide access after the employee had separated from the Firm. As the Firm's former COO, Ms. Varlack supervised the Firm's IT Administrator during her tenure. Managing Partner Denver G. Edwards has assumed that responsibility since her departure. Mr. Edwards has not authorized the IT Administrator to grant any lawyer or employee access to Ms. Varlack's email account since she departed.

Furthermore, the Firm uses Egnyte, a cloud-based, content security, compliance, and collaboration application for document management. Edwards Decl. ¶ 8. All Firm employees are

---

[1] Patrick A. Bradford, Denver G. Edwards and Camille Joseph Varlack are the founding partners of Bradford Edwards & Varlack LLP. Each of them shall be referred to individually as "Partner" and collectively as "Partners."

directed to store documents in Egnyte. All Firm employees have access to Egnyte and no expectation of privacy exists for documents stored in Egnyte. Egnyte automatically creates a private subfolder for each user to store confidential documents. Only that user has access to his or her private subfolder. Edwards Decl. ¶ 9. The Firm has not located any Avangrid documents in Egnyte. Murphy Decl. ¶ 6. Ms. Varlack did not create a private subfolder to store Avangrid documents, Murphy Decl. ¶ 7, and she has not submitted a declaration or affidavit stating that she did so. Finally, if Ms. Varlack otherwise saved the October 12, 2022 board materials to a laptop, she has not provided any declaration or affidavit stating that she did so, and any such laptop remains in her possession. Edwards Decl. ¶ 17. Plaintiffs' allegation that the Firm is in possession of Avangrid confidential materials is a fiction.

### C. Means Avangrid Used to Share Confidential Information with Ms. Varlack

Unbeknownst to Messrs. Bradford and Edwards, Ms. Varlack used her Firm email address, instead of a personal email account, to communicate with Avangrid. Ms. Varlack also enlisted assistance from Sherry Chong to coordinate logistics for board meetings. Avangrid occasionally sent emails to Ms. Varlack and copied Ms. Chong on the emails. On other occasions, Ms. Varlack forwarded emails to Ms. Chong. Ms. Varlack also made Ms. Chong a delegate for her Outlook calendar such that Ms. Chong received calendar invitations that Ms. Varlack received. Chong Decl. ¶ 6. Avangrid's emails to Ms. Varlack included attachments, such as board meeting agendas, flight and hotel information, and director surveys. Chong Decl. ¶ 6. Avangrid occasionally contacted Ms. Chong directly if Ms. Varlack was unresponsive to emails. The assistance that Ms. Chong provided to Ms. Varlack was purely administrative, and Ms. Chong never received or otherwise viewed any Avangrid confidential information. Avangrid did not send other materials, much less confidential materials, to the Firm's Midtown offices where Messrs. Bradford and Edwards worked.

4

Nevertheless, Plaintiffs assert that Avangrid sent materials that were marked "confidential" to her Firm email address on October 12, 2022. The "confidential" information allegedly included a "privileged litigation update" that "discuss[ed] strategy in this litigation and other disputes with Defendants." Weir Decl. ¶ 8. The October 12, 2022 email and the meeting materials are the sole confidential information that Plaintiffs claim to be in the Firm's possession. Ms. Varlack did not discuss or mention the existence or contents of these materials with Messrs. Bradford or Edwards, and neither of them had any knowledge of the email or meeting materials until Plaintiffs sought to disqualify the Firm is this litigation.

### D. Ms. Varlack's Separation From Bradford Edwards

Ms. Varlack withdrew from Bradford Edwards effective October 31, 2022 to take a senior position with the City of New York. Ms. Varlack plays no role in the management of the Firm, receives no compensation of any kind from the Firm, and cannot take any action regarding the Firm. Ms. Varlack's return to the Firm, if at all, is subject to a unanimous vote by Messrs. Bradford and Edwards. Meanwhile, Ms. Varlack can request that the Firm return her de minimis capital account – which is unrelated to the Firm's representation of Defendants – at any time, consistent with the Firm's Partnership Agreement.

Defendants retained Bradford Edwards in March 2023 – more than four months after Ms. Varlack left the Firm. Ms. Varlack had no role in (or knowledge of) the Firm decision to represent the Defendants. She has no authority over any Firm representation, including that of Defendants.

## ARGUMENT

### I. LEGAL STANDARD

"It is well settled that a party in a civil action has the 'right to freely choose his or her own counsel.'" *Gurniak v. Emilsen*, 995 F. Supp. 2d 262, 269 (S.D.N.Y. 2014), quoting *Hempstead Video, Inc. v. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (brackets omitted). "Because

5

disqualification motions can often be strategically motivated, create delay and additional expense, and interrupt attorney-client relationships, the movant must satisfy a high standard of proof to disqualify the non-movant's counsel." *Streichert v. Town of Chester*, 2021 U.S. Dist. LEXIS 35468, at *11-12 (S.D.N.Y. Feb. 25, 2021); *see also Gurvey v. Cowan, Liebowitz & Latman, PC*, 2014 U.S. Dist. LEXIS 163136, at *8 (S.D.N.Y. Nov. 20, 2014) ("In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny."); *Gurniak*, 995 F. Supp. 2d at 269 ("Thus, the Second Circuit disfavors attorney disqualification, and the party seeking it must meet a high standard of proof.") (internal quotation omitted). "'Mere speculation will not suffice' to meet this high standard." *Streichert*, 2021 U.S. Dist. LEXIS 35468, at *12, quoting *Twin Labs., Inc. v. Weider Health & Fitness*, 1989 WL 49368, at *4 (S.D.N.Y. May 4, 1989)."Mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the *facts* present a real risk that the trial will be tainted." *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (emphasis added). "Whether to disqualify an attorney in a particular case can be determined only after painstaking analysis of the facts and precise application of precedent." *Jose Luis Pelaez, Inc. v. McGraw-Hill Global Educ. Holdings LLC*, 366 F. Supp. 3d 567, 572 (S.D.N.Y. 2019) (internal quotation omitted).

"The standard for disqualification varies depending on whether the representation is concurrent or successive." *Hempstead Video*, 409 F.3d at 133. There is no concurrent representation here, as the Firm does not represent (and has never represented) Avangrid. No concurrent representation would arise even if Ms. Varlack had not left the firm, since Ms. Varlack serves on Avangrid's board solely in her individual capacity and does not represent Avangrid in her capacity as an attorney.

In situations where it "is not a scenario involving traditional…legal representation but rather legal representation of one party and service on a board of directors that is the other party, the Court applies the more lenient standard applicable to successive representation." *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295 (E.D.N.Y. 2010). Under that standard, "an attorney may be disqualified if:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; **and**

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video*, 409 F.3d at 133 (emphasis added). Plaintiffs must satisfy all three prongs to prevail on their motion to disqualify the Firm, and they cannot do so.

Where "the same individual lawyer participated in the prior and current representation," there is a presumption that the lawyer had access to client confidences. *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 164-65 (E.D.N.Y. 2006). However, where the prior representation and the subsequent representation involve different attorneys, "this presumption is rebuttable through a showing that privileged information was not passed to other members of the firm." *Reilly v. Computer Assocs. Long-Term Disability Plan*, 423 F. Supp. 2d 5, 10 (E.D.N.Y. 2006). "[T]he Second Circuit has expressly accepted the proposition that 'in appropriate cases and on convincing facts, isolation—whether it results from the intentional construction of a "Chinese Wall," or from *de facto* separation that effectively protects against any sharing of confidential information—can adequately protect against taint.'" *Id.* at 10-11, quoting *Hempstead Video*, 409 F.3d at 138; *see also Montague v. Poly Prep Country Day Sch.*, 2022 U.S. Dist. LEXIS 98075, at *9 (E.D.N.Y. 2022) ("Evidence of an ethical screen or evidence of *de facto* separation that would effectively

7

prevent the sharing of client confidences may be sufficient to rebut the presumption.") (internal quotation and brackets omitted).

"In determining the nature and efficacy of screening practices, the Court may rely on affidavits and testimony." *Montague*, 2022 U.S. Dist. LEXIS 98075, at *10; *see also Reilly*, 423 F. Supp. 2d at 11-12 (affidavits submitted by all relevant attorneys "provide strong circumstantial support for the claim that [attorney] was isolated from others in the firm"); *Renz v. Beeman*, 1989 U.S. Dist. LEXIS 1784, at *23-24 (N.D.N.Y. Feb. 21, 1989) (uncontroverted affidavits and attorney's testimony demonstrated that attorneys never shared client confidences).

## II.   BRADFORD EDWARDS SHOULD NOT BE DISQUALIFIED

The standard set forth in *Hempstead Video* is cumulative. Therefore, Plaintiffs must prevail on each of the three prongs to succeed on their Motion to Disqualify. Plaintiffs have colorable arguments to support the first two prongs, and Defendants therefore focus on the third prong, which Plaintiffs have not and cannot satisfy.

The presumption that client confidences are shared among members of the Firm is easily rebutted. First, Ms. Varlack left Bradford Edwards seven months ago – just 19 days after she received the email on October 12, 2022, which purportedly contained confidential information about the litigation at issue, and four and a half months before the Firm began representing Defendants. Ms. Varlack is fully screened off from this matter and the risk of inadvertent disclosure of confidential information nonexistent. *Reilly*, 423 F. Supp. 2d at 11 (there is "no concern over whether a screen would be effective going forward" where the attorney has already left the firm).

Second, even though Bradford Edwards is a small firm, Ms. Varlack's separate office and remote work during the Covid-19 pandemic differentiates this case from those in which the court

8

found that the risk of disclosure in a small law firm required disqualification. *See Reilly*, 423 F. Supp. 2d at 11 (distinguishing cases). "The presumption that confidences are shared among attorneys who are members of the same firm stems from the notion that attorneys who are working together in the same space are likely to discuss with one another the issues that arise and the information they may obtain in the matters they are handling for their respective clients." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2016 U.S. Dist. LEXIS 22228, at *102 (E.D.N.Y. Feb. 23, 2016). "Physical separation is an important distinction because it substantially reduces the chances of inadvertent disclosure." *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 347 (S.D.N.Y. 2011).

Bradford Edwards launched during the Covid-19 pandemic when former Governor Andrew Cuomo's Executive Order shuttered substantially all New York businesses. Aside from Messrs. Bradford and Edwards, who used the Firm's Midtown offices, the Firm primarily operated remotely during 2020-2021. Ms. Varlack, in particular, worked remotely from her home office or from an office that the firm leased at the Brooklyn Navy Yard. When New York began to reopen in 2022, Ms. Varlack continued to work remotely from her Brooklyn home, the Brooklyn Navy Yard, New York City government offices, and sparingly from the Firm's Midtown offices.

The Partners maintained communications primarily over Zoom or by email from 2020 through 2022. Messrs. Bradford and Edwards never visited Ms. Varlack's home office nor her office at the Brooklyn Navy Yard. Ms. Varlack did not leave any Avangrid documents in Messrs. Bradford or Edwards' respective offices on any intermittent visit to the Firm's Midtown offices after she was nominated to the Avangrid board of directors. Because Ms. Varlack maintained a separate offices in Brooklyn or at client offices isolated from the Firm's Midtown offices used by Messrs. Bradford and Edwards, it is "unlikely that [she] inadvertently disclosed

confidences…given the 'de facto separation' that existed between [her] and" Messrs. Edwards and Bradford. *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 347 (S.D.N.Y. 2011) (presumption rebutted where, *inter alia*, attorney was "physically separated from the case" because he worked in a separate office). Thus, it simply is not the case that working in a small firm automatically requires disqualification based on information sharing, particularly under the unique circumstances of forced isolation due to the Covid-19 pandemic. Plaintiffs' speculative musings about "the risk of water-cooler chat" and "documents left around the office" are baseless. Motion at 2.

Third, Plaintiffs' Motion to Disqualify lacks evidence that Ms. Varlack shared client confidences during the 19 days between when Ms. Varlack received the October 12, 2022 email and when she withdrew from the Firm. Plaintiffs argue that they are not required to show "proof of disclosure or use of privileged information." Motion at 7-8, quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978). But the "well established principle" that "a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case," *id.*, applies *only* where the *same individual attorney* is involved in the prior and current representations. *U.S. v. Prevezon*, 839 F.3d 227, 240 (2d Cir. 2016) ("where *the same individual lawyer* participated in the prior and current representation, the movant is not required to make a specific showing that confidences were passed to counsel") (internal quotation omitted; emphasis added). Where different attorneys are involved, the movant *must* make a showing that the attorney subject to disqualification received client confidences.

The only ways that disclosure of the litigation summary could have happened is if Ms. Varlack (1) told her former Partners about the litigation summary; (2) Ms. Varlack downloaded the litigation summary to a local drive on her computer and stored it on Egnyte, which is open to

10

all Firm personnel; or (3) Firm personnel improperly accessed her Firm email account. Sworn declarations that Defendants submitted demonstrate that none of these things happened. Plaintiffs "cite to no examples of confidences that were actually shared, and 'mere speculation will not suffice.'" *Am. Int'l Grp.*, 827 F. Supp. 2d at 347, quoting *Paretti v. Cavalier Label Co.*, 722 F. Supp. 985, 987 (S.D.N.Y. 1989). Plaintiffs only speculate that "confidences were actually shared" with other attorneys or employees at Bradford Edwards, *id.*, and "[m]uch more than defendants' mere speculation and conclusory allegations are required to disqualify a party's chosen attorney." *Sommer v. Aronow*, No. 95-cv-9230, 1998 WL 85748, at *3 (S.D.N.Y. 1998).

Defendants reiterate that Ms. Varlack did not share any information about Avangrid with Messrs. Bradford and Edwards, much less a confidential litigation summary unrelated to the Firm's business. No Firm personnel could access Ms. Varlack's email unless the person attempting to access her email navigated the two-factor authentication protocol, which required possession of Ms. Varlack's password and a unique, constantly changing access code. The Firm's IT Administrator's research found no instances where any Firm personnel surreptitiously accessed Ms. Varlack's email account during the October 12, 2022 period or thereafter. Additionally, neither Messrs. Bradford nor Edwards directed the Firm's IT Administrator to access Ms. Varlack's email account once she separated from the Firm on October 31, 2022. Tellingly, Ms. Varlack has not submitted a sworn declaration or affidavit in support of the Motion to Disqualify stating that she shared the confidential litigation summary with her former Partners or any employee at the Firm or saved the litigation summary to Egnyte.

Finally, while Plaintiffs have submitted no proof that other attorneys at Bradford Edwards received Avangrid's confidential information, the Firm has submitted substantial evidence that no such sharing of confidential information took place. Messrs. Bradford and Edwards have

11

submitted sworn declarations stating that they have not seen the purported confidential litigation summary in the October 12, 2022 email to Ms. Varlack and that they never discussed any aspect of this case – or any other information regarding Avangrid or Ms. Varlack's work as a board member – with Ms. Varlack. Edwards Decl. ¶ 13, Bradford Decl. ¶10. *See Reilly*, 423 F. Supp. 2d at 12 (crediting attorney affidavits "that unequivocally state that Heck did not provide the affiants with any confidential information concerning Unum"); *Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 279 (S.D.N.Y. 2004) (attorney affidavits stating that disqualified attorney never disclosed confidential information to them "weigh against" imputing disqualification to the firm).

Ms. Chong has likewise submitted a sworn declaration stating that she never received any information regarding this litigation, or any other Avangrid confidential information; that she never discussed any confidential Avangrid information with Ms. Varlack; and that her work relating to Ms. Varlack's Avangrid board service was purely administrative, such as scheduling meetings and making travel arrangements. Chong Decl. ¶6. And while Plaintiffs assert that Ms. Varlack asked them to mail her Avangrid board materials, Plaintiffs do not claim that they sent such materials to her. Motion at 4. Mr. Weir's declaration does not contend that Avangrid sent documents to Ms. Varlack or where such documents may have been sent. Ms. Varlack does not provide a sworn declaration stating that she received physical documents from Avangrid related to the litigation summary, or any other Avangrid confidential information, at any location and particularly not at the Firm's Midtown offices where Messrs. Bradford and Edwards worked. According to Ms. Chong, the only time that she is aware of Avangrid sending Ms. Varlack something in the mail, the materials were sent to Ms. Varlack's home address. Plaintiffs have marshaled no evidence that confidential Avangrid materials – relating to this litigation or otherwise

– are accessible to any attorney or employee at Bradford Edwards.

Moreover, Quentin Murphy, the Firm's Information Technology Administrator, performed a diligent search of the Firm's email system and has uncovered no evidence that any Firm employee surreptitiously accessed Ms. Varlack's email account before or after her separation from the Firm. Murphy Decl. ¶5. Mr. Murphy also reported that Ms. Varlack private subfolder on Egnyte was empty.

Meanwhile, Plaintiffs have not submitted a declaration or affidavit from Ms. Varlack to support any allegations in Plaintiffs' Motion to Disqualify. The statements in the Weir Declaration do not speak to the unique facts and circumstances surrounding the Firm's structure or its remote operations during the Covid-19 pandemic. Instead, Plaintiffs focus on the Firm's launch; the Partners' prior association at a defunct law firm; Ms. Varlack's de minimis capital account; and the Firm's business development outreach toward Avangrid that did not result in the Firm being retained.[2] None of these points are relevant to whether the Firm is conflicted and therefore Defendants should be denied their choice of counsel.

Bradford Edwards has clearly rebutted the presumption that Avangrid's confidences have been shared with other attorneys or employees of the Firm. *Renz*, 1989 U.S. Dist. LEXIS 1784 (attorney affidavits and testimony rebutted the presumption); *Reilly*, 423 F. Supp. 2d at 12.

---

[2] Plaintiffs contend that Mr. Edwards worked with Ms. Varlack to find co-investors for Avangrid in an effort to establish ties between the Firm and Avangrid. Plaintiffs' references to the Firm's business development activities are an attempt to misrepresent the facts and mislead the court. Ms. Varlack introduced Ms. Kimberly Harriman to Mr. Edwards in or about February 8, 2021 as part of the Firm's business development initiative. Edwards Dec. ¶ 11. Mr. Edwards and Ms. Harriman discussed New York State's renewable energy initiatives. *Id.* Ms. Harriman, in turn, sought diverse participation in Avangrid's Excelsior Connect project because Avangrid needed diversity to improve its chances of winning a renewable energy mandate from New York State. *Id.* Mr. Edwards, as a courtesy to Ms. Varlack, and in an effort to create goodwill with Avangrid, sent a one-page Excelsior Connect document to a limited number of individuals. *Id.* None of Mr. Edwards' professional contacts sought to engage in the project. *Id.* Again, the Firm never had a business relationship with Avangrid, and statements in Plaintiffs' Motion to Disqualify that Mr. Edwards worked with Ms. Varlack "on sourcing co-investors for Avangrid project in 2021" are exaggerated. Avangrid's reliance on a 2021 business development outreach that resulted in no engagement (or even a conflicts check) is a weak basis to establish an attorney client relationship sufficient to disqualify the Firm.

Plaintiffs have not met the "high standard of proof" required to disqualify Bradford Edwards as counsel to Defendants, and the Motion should be denied. *Gurniak*, 995 F. Supp. 2d at 269.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion to disqualify Bradford Edwards & Varlack LLP as counsel to Defendants.

Dated: New York, New York
May 30, 2023

*/s/ Patrick A. Bradford*

Patrick A. Bradford
Denver G. Edwards
Bradford Edwards & Varlack LLP
12 East 49th Street, 11th Floor
New York, NY 10017
Tel: 917.671.9407
Email: pbradford@bradfordedwards.com
         dedwards@bradfordedwards.com

*Attorneys for Defendants Security Limits, Inc. and Paulo Silva*