UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVANGRID NETWORKS, INC., and<br>AVANGRID SERVICE COMPANY,<br><br>               Plaintiffs,<br><br>- v. -<br><br>SECURITY LIMITS, INC. and PAULO SILVA,<br><br>               Defendants. | Case No.  22 Civ. 9622 (AT) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO DISQUALIFY BRADFORD, EDWARDS & VARLACK LLP
AS COUNSEL TO DEFENDANTS**

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1
ARGUMENT .......................................................................................................................... 4
    A.    Ms. Joseph Varlack Is Conclusively Presumed to Have Seen Any Avangrid Confidences She Had Access To—Which Is All of Them............................................. 4
    B.    Defendants Have Not Convincingly Rebutted the Presumption of Shared Confidences. 7
CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-MD-1775, 2016 WL 727171 (E.D.N.Y. Feb. 23, 2016) ................................................10

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
  827 F. Supp. 2d 341 (S.D.N.Y. 2011) ....................................................................................11

*Benevida Foods, LLC v. Advance Mag. Publishers Inc.*,
  No. 15CV2729 (LTS) (DF), 2016 WL 3453342 (S.D.N.Y. June 15, 2016) ........................8, 9

*DeFazio v. Wallis*,
  459 F. Supp. 2d 159 (E.D.N.Y. 2006) ..................................................................................6, 7

*Emle Indus., Inc. v. Patentex, Inc.*,
  478 F.2d 562 (2d Cir. 1973) ............................................................................................ passim

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*,
  722 F. Supp. 2d 295 (E.D.N.Y. 2010) .............................................................................1, 8, 9

*Gov't of India v. Cook Indus., Inc.*,
  569 F.2d 737 (2d Cir. 1978) .....................................................................................................5

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir. 2005) ............................................................................................1, 6, 7

*Hull v. Celanese Corp.*,
  513 F.2d 568 (2d Cir. 1975) .....................................................................................................6

*Papyrus Tech. Corp. v. New York Stock Exch., Inc.*,
  325 F. Supp. 2d 270 (S.D.N.Y. 2004) ...............................................................................10, 11

*People v. Greenberg*,
  50 A.D.3d 195 (1st Dep't 2008) ...............................................................................................5

*Reilly v. Computer Assocs. Long-Term Disability Plan*,
  423 F. Supp. 2d 5 (E.D.N.Y. 2006) ........................................................................................11

*Stratton v. Wallace*,
  No. 11-CV-0074A SR, 2012 WL 3201666 (W.D.N.Y. Aug. 2, 2012) ....................................6

*Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc*,
  No. 3:10CV60(JBA), 2011 WL 12910725 (D. Conn. Dec. 30, 2011) .....................................6

**Other Authorities**

N.Y. R. Prof. Cond. Rule 1.18 ............................................................................................................8

N.Y. R. Prof. Cond. Rule 7.5 .........................................................................................................3, 7

**INTRODUCTION**

This motion is about whether Bradford, Edwards & *Varlack* LLP can represent a client adverse to wholly-owned subsidiaries of a company on whose board Camille Joseph *Varlack* serves. Defendants effectively concede that the only remaining issue in dispute here is whether they can rebut the presumption that Ms. Joseph Varlack shared some of what she had access to with her partners. It is hornbook Second Circuit law that attorneys associated in a firm are presumed to share confidences, and that the only way to rebut that presumption is to show "in appropriate cases and on convincing facts, isolation," generally through an ethical wall, such that "the practices and structures in place are sufficient to avoid disqualifying taint." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 137, 138 (2d Cir. 2005). And "in a small firm," courts have consistently held that "the presumption is much stronger" and harder to rebut. *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 308 (E.D.N.Y. 2010).

Defendants cannot do so. They do not argue that Bradford, Edwards & Varlack LLP established any ethical wall immediately upon contemplation of taking the case or even reasonably after the firm took the case. To the contrary, Mr. Bradford admits contacting Ms. Joseph Varlack about the case. Moreover, the firm's structures are so loose that Ms. Joseph Varlack, even while on public service leave, continued to have confidential Avangrid materials, including discussion of sensitive litigation, regulatory, and compliance matters handled by Ms. Chong—the same Bradford, Edwards & Varlack Director of Operations on whose testimony Defendants now rely about her searches for Avangrid records in response to this motion. Ms. Chong's dual role alone shows that there a gaping, wide hole in whatever supposed wall the firm may have belatedly set up.

1

For these and many other reasons, Defendants cannot come close to meeting their heavy burden to show by convincing facts that nothing could possibly have reached anyone else in their firm, so they instead make arguments—straw men—that miss the point.

***First***, Defendants argue that Avangrid has not proven that *a specific document* was *in fact seen* by Bradford, Edwards & Varlack lawyers other than Ms. Joseph Varlack—but the Second Circuit has specifically and unequivocally held that parties are not required to make such a showing. "[T]he court need not, indeed cannot, inquire whether the lawyer did, *in fact*, receive confidential information during his previous employment which might be used to the client's disadvantage." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). What matters is having access, and Ms. Joseph Varlack had that in droves as a director. And she is presumed to have discussed what she saw with her law partners unless Defendants convincingly rebut the presumption.

***Second***, while the presumption of shared confidences can be rebutted by an ethical wall in appropriate circumstances, Defendants do not contend that Bradford, Edwards & Varlack, a very small firm—just five lawyers are shown on their website—created a formal wall; instead they contend that mostly-remote working attorneys having separate emails is the equivalent of formal screening. It is not. There was no memorandum telling Ms. Joseph Varlack not to seek informal advice from the attorneys at her firm if Avangrid had a problem and telling those other attorneys not to talk to Ms. Joseph Varlack about her board service. Rather, they rely on the assertion that they have normal computer systems and separate email addresses for each attorney—just like every law firm. That is not an ethical wall.

Illustrating the problem precisely, Defendants contend Ms. Chong looked for Avangrid's privileged information on their computer systems to respond to the motion. (Opp. at 2.) But

2

Ms. Chong is *the very same administrative professional who received Avangrid board communications on Ms. Joseph Varlack's behalf*. Avangrid has to take it on trust that Ms. Chong did not find anything privileged—the only way for her to tell if something is Avangrid's privileged information is to look at it. And, of course, the fact that Ms. Chong received confidential information and is now assisting the attorneys now opposing Avangrid demonstrates that at least one person who had access to Avangrid confidential information is now working against Avangrid. Beyond that, the reason such a search was necessary is *because there was no ethical wall in place from the outset*. Especially at a small firm, mere denials are not enough to rebut the presumption that confidences slipped through, and they are certainly not enough when the person conducting searches to support Defendants' opposition is the same person Avangrid communicated with.

    ***Third***, Defendants contend that Ms. Joseph Varlack's status at the law firm that bears her name does not matter here. She unquestionably was sent information about this very case and other matters relevant to it while she was an active partner and while no screening mechanisms were in place for her role as a director at Avangrid. The firm's name is a strong indication that Ms. Joseph Varlack has some sort of continuing active role despite Defendants' denials, since if she does not, then the firm is violating Rule 7.5(b) and (c) of the Rules of Professional Conduct by using a public official's name during a period when she is not practicing at the firm. Indeed, even were the firm able to argue ignorance of these ethical rules, as of the date of filing this reply, the firm continues to use the name Bradford, Edwards & *Varlack* LLP despite Avangrid's first having raised this issue on March 27, 2023. Doc. 39. And, even if the firm were improperly using her name—an assertion that is not credible here—it is clear that she has used firm

3

resources, including Ms. Chong, for Avangrid board work since her departure, and Ms. Chong is now helping Defendants oppose this motion.

In sum, while Avangrid does not lightly seek disqualification of opposing counsel, the risk that privileged and confidential Avangrid information (including about this case and issues related to it) were, or will be, shared within Bradford, Edwards & Varlack is simply too high. Defendants cannot show the convincing evidence required that, despite its total lack of timely or effective screening, Avangrid's confidences were successfully isolated to Ms. Joseph Varlack and Ms. Chong. To the contrary, Defendants' use of Ms. Chong to assist them in opposing the motion shows that no effective screening is in place; it is an archway, not a wall. Disqualification is remedial, and Avangrid need not show intentional misconduct; all it needs to show is the risk of trial taint, which it has done. And if anything, Defendants' opposition only underlines that such a risk plainly exists here.

## ARGUMENT

**A.     Ms. Joseph Varlack Is Conclusively Presumed to Have Seen Any Avangrid Confidences She Had Access To—Which Is All of Them.**

Defendants contend that Avangrid must prove that the October 12, 2022 board materials are in Bradford, Edwards & Varlack's actual possession. (Opp. at 3-4.) That is simply wrong under settled Second Circuit law. Rather, there is an irrebuttable presumption that Ms. Joseph Varlack received all privileged information to which she had access, and a strong but rebuttable presumption that she shared it with her partners.

This is not a motion about one email, no matter how much Defendants attempt to downplay their failure to establish real screening mechanisms by treating itself as only being about those specific board materials. (Opp. at 8, 10.) This motion is about the wide swath of information about Avangrid's litigation, compliance, and regulatory matters—including this case

4

and numerous other issues relevant to its disputes with Mr. Silva—to which Ms. Joseph Varlack had direct access as a director of Avangrid and a member of the audit and compliance committee that expressly addresses litigation matters, of which the board materials are just one particularly egregious example. Indeed, under New York law (where Avangrid, Inc. is incorporated), "a corporate director has an absolute, unqualified right, with roots in the common law, to inspect the corporate books and records." *People v. Greenberg*, 50 A.D.3d 195, 199 (1st Dep't 2008). In other words, Ms. Joseph Varlack had and has an absolute right to look at any privileged information Avangrid possessed or possesses.

Further, Defendants' focus on specific documents is plainly wrong because Second Circuit has long held that a party is not required to prove what specific privileged materials an attorney viewed, since that would require the party to disclose what confidential information existed. *E.g.*, *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978) ("In order to grant a disqualification motion, a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case."); *Emle*, 478 F.2d at 571 ("[T]he court need not, indeed cannot, inquire whether the lawyer did, *in fact*, receive confidential information during his previous employment which might be used to the client's disadvantage."). The fact that the attorney *could have* received confidences about the relevant subject-matter is all that need be shown, so Plaintiffs need not ask Ms. Joseph Varlack to recall every document she saw and every conversation she had as a director or to submit a declaration to that effect.

Defendants seem to contend that the principle that a party need not identify confidences a conflicted attorney possessed does not apply in imputed conflict cases. (Opp. at 10.) But the Second Circuit has held precisely the opposite, applying *Emle* to presume that an individual

5

attorney possessed confidences and then finding that the firm's acknowledged screening efforts were still insufficient. *Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir. 1975) ("We credit the efforts of the Rabinowitz firm to avoid the receipt of any confidence [from the conflicted attorney]. Nonetheless, *Emle* makes it clear that the court need not 'inquire whether the lawyer did, in fact, receive confidential information.'"). Cases since *Hempstead Video* have continued to apply the *Emle* presumption that the individual attorney possessed all of the confidences she might have accessed before considering whether the firm adequately screened the individual attorney. "[T]he presumption that the client shared confidences with the individual lawyer is not rebuttable, but the firm itself will be permitted to defend against disqualification by showing that the conflicted attorney was subject to appropriate 'screening' measures." *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 166 (E.D.N.Y. 2006). Thus, in *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, the court conclusively presumed that the individual attorney had access to all confidences substantially related to the matter on which he had previously worked; the only thing that was rebuttable was the presumption that he then shared those confidences. No. 3:10CV60(JBA), 2011 WL 12910725, at *7 (D. Conn. Dec. 30, 2011). So too in *Stratton v. Wallace*, where a court similarly conclusively presumed the individual attorney's access and then looked to whether the firm had rebutted the presumption of sharing. No. 11-CV-0074A SR, 2012 WL 3201666, at *4 (W.D.N.Y. Aug. 2, 2012).

  Thus, Defendants' arguments over the October 12, 2022 Board materials are misplaced. It is not just those materials that are at issue— Ms. Joseph Varlack had the ability to access *everything* related to this case and related matters as a director and obviously participated in the board and subcommittee meetings, just as two examples. And thus, even if the Court were to credit Defendants' argument that Ms. Joseph Varlack's leave from the firm renders her

unaffiliated with it—which would mean that the firm is blatantly violating Rules 7.5(b) and (c) of the Rules of Professional Conduct by still using her name—it is not just the few weeks after October 12 that are at issue but Ms. Joseph Varlack's entire board service. Under *Emle*, Avangrid is not required to itemize every confidence Ms. Joseph Varlack possessed; doing so would reveal significant information about those confidences and thus prejudice Avangrid. Rather, Ms. Joseph Varlack is conclusively presumed to have seen whatever existed—and, as a director, she had an absolute right under New York law to see everything. The only question is thus whether Defendants have rebutted the presumption that lawyers trust their partners and associates and talk to one another.

B.   **Defendants Have Not Convincingly Rebutted the Presumption of Shared Confidences.**

Defendants fail to convincingly rebut the presumption that Ms. Joseph Varlack spoke to her partners about her Board work or that information otherwise leaked out within the firm. To the contrary, Ms. Joseph Varlack used Ms. Chong, the firm's Director of Operations, for Avangrid board work, and now the firm's other partners have had her perform work on this case in response to this motion. Further, Mr. Bradford admits discussing whether to take the case with Ms. Joseph Varlack even though she is supposedly no longer affiliated with the firm that still bears her name. Thus, Defendants' response *confirms*, rather than rebuts, the presumption that people with access to Avangrid information are now working directly adverse to Avangrid.

As an initial matter, Defendants downplay the burden they face. The very cases they cite emphasize how hard it is for a small firm to rebut the presumption of shared confidences. *Hempstead Video*—the leading case on rebutting the presumption—emphasizes that "isolation" requires "convincing facts." 409 F.3d at 138. They cite *DeFazio*, which holds that "screening" is possible in "a case involving an attorney who is associated with a larger firm." 459 F. Supp. 2d

7

at 166. They cite *Filippi* for another point, but ignore its extensive discussion holding that "the presumption is much stronger within a small firm than a large firm" because "the circumstances of a small firm may be such that a court will not be able to determine whether the proposed or implemented screening measures will effectively prevent disclosure." 722 F. Supp. 2d at 308; *see also id.* (collecting cases).[1] After all, small firms are generally close-knit, and also lack many of the mechanisms courts have found persuasive to rebut the presumption such as (i) separate offices that rarely interact, (ii) a firm general counsel—separate from the attorneys handling the conflicting matters—who has experience implementing and ensuring compliance with formal screening measures, (iii) electronic measures to confirm that each attorney has read and agreed to memorandums establishing ethical walls, and (iv) electronic methods to wall off electronic documents beyond the facts true of every firm, for example, that attorneys each have their own email address. By contrast, here, none of these mechanisms exist. Indeed, the firm's first name partner—the attorney directly involved in this case—is the same person tasked with making sure that his colleagues do not improperly access information.

Thus, the inquiry here before the Court as to whether effective screening measures existed is straightforward, including because Ms. Chong undisputedly communicated with Avangrid and received confidential attachments and yet now is tasked with supporting Defendants' opposition to the motion. Ms. Chong admits that she "provided administrative support to Ms. Varlack" after she joined the Avangrid board and "Avangrid personnel occasionally copied me on certain other emails addressed to Ms. Varlack." (Doc. 52 ¶ 6.) She

---

[1] The comments to Rule 1.18 of the Rules of Professional Conduct make this same point: "[a] small firm may need to exercise special care and vigilance to maintain effective screening." *Benevida Foods, LLC v. Advance Mag. Publishers Inc.*, No. 15CV2729 (LTS) (DF), 2016 WL 3453342, at *12 (S.D.N.Y. June 15, 2016) (quoting Comment 7B to New York's version of Rule 1.18).

confirms that "meeting agendas or director surveys" were sent to her in "attachments," and says that (despite describing the contents of the attachments in her declaration) she "did not read the attachments." (*Id.*) She also confirms that Ms. Joseph Varlack often "forwarded emails" to her. (*Id.* ¶ 4.) As previously discussed, Ms. Joseph Varlack appears to have *still* used Ms. Chong's services after going on public service leave. (Doc. 47-2.) She does not say she deleted the emails, so presumably she still has them. If effective screening were in place, Ms. Chong would thus have decidedly been on the Avangrid side of the wall. And yet Defendants now argue that "after a diligent search, neither Sherry Chong, Director of Operations, nor the Firm's outsourced IT Administrator uncovered any evidence that Ms. Varlack saved the confidential litigation summary (or any other Avangrid documents) in the Firm's document management system or a private subfolder on the same system." Doc. 49 at 2. So, despite Ms. Chong having access to Avangrid emails and attachments, the firm decided to use her services adverse to Avangrid. Tellingly, they also do not say that she has done no other work on this case. Even if the firm had timely established proper screening measures—and it nowhere says it did—that sort of gaping hole in a wall utterly negates any efforts to rebut the presumption of shared confidences. *See, e.g.*, *Benevida*, 2016 WL 3453342, at *14 (presumption not rebutted where conflicted small-firm attorney worked on an engagement letter and declaration opposing the motion to disqualify).

    Indeed, none of Defendants' declarations actually say that there were, or even are today, formal screening measures in the first place. They do not say Ms. Joseph Varlack received a memorandum telling her to be careful not to talk about her board service with her partners, or that her partners were told not to talk about it with her. They do not say that Ms. Chong was told that, due to her exposure to Avangrid information, she should not assist with this case; quite the

9

opposite, she appears to have actively assisted.[2] They do not say that the firm instituted any formal measures even after Mr. Edwards told Mr. Bradford that Ms. Joseph Varlack served on Avangrid's board. (Doc. 50 ¶ 9.) *All* they say is that people cannot access other people's email accounts unless someone voluntarily shares their password or forwards the email and the firm's document management system allows users to save documents in private subfolders. (Doc. 52 ¶¶ 4-5; Doc. 50 ¶ 6; Doc. 53 ¶¶ 3-6; Doc. 51 ¶¶ 6-9.) But that is just how every modern law firm operates; it is not *screening*. And as discussed above, Ms. Chong's receipt of emails about Avangrid—both from Avangrid directly and forwarded by Ms. Joseph Varlack—shows precisely why "we all have our own email accounts and our shared drive has private folders as well as shared ones" is not the equivalent of screening. Real screening—screening that includes but is not limited to locking down shared firm resources and informing the lawyers at the firm about the ethical wall—is needed from the inception of the potentially disqualifying representation. *Cf. Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F. Supp. 2d 270, 280 (S.D.N.Y. 2004) (sealing document management system was "not alone sufficient to rebut the presumption of shared confidences" but robust formal screening memoranda in combination with multiple other factors sufficed). And, of course, normal law firm technology does not prevent the risk of information leaking in conversations, whether in person or on Zoom.[3] Real screening just did not happen here.

---

[2] Given the lack of denials in the declarations, if the Court does not determine on the papers that Defendants have failed to rebut the presumption, Plaintiffs respectfully request an opportunity to cross-examine Ms. Chong to determine what work she has done on this matter.

[3] Defendants reference the fact that they worked from home and communicated primarily over Zoom or email and only went to the office intermittently, but information leakage in a Zoom call between attorneys who constantly work together and manage a firm together is just as likely as in an in-office conversation. (Opp. at 9.) There is no analogy between a close-knit boutique where attorneys mostly work from home and a large office where an attorney barely interacts with the case team, as was the case in *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775,

Similarly, while Defendants cite a handful of cases in which courts credited unrebutted declarations from both the conflicted attorneys and the case team that no information-sharing occurred, those cases are plainly distinguishable by the presence of real screening measures or other facts that made disclosure unlikely such as attorneys from different offices or practices in a large firm. Thus, in *Reilly v. Computer Assocs. Long-Term Disability Plan*, the affidavits *supplemented* extensive formal screening measures for an attorney who was in a different firm office from the case team. 423 F. Supp. 2d 5, 12 (E.D.N.Y. 2006). Similarly, in *Papyrus*, an attorney switched firms after a representation years earlier when he was a junior associate that was so minor that he apparently forgot about it; the firm did not staff him on the case, and, when it discovered the prior representation, instituted formal screening measures. 325 F. Supp. 2d at 275, 279. Only against that backdrop did the Court rely on declarations to remove any residual doubt. *Id.* at 279. This case involves a senior board member with substantive case knowledge, not a junior associate, with no formal screening measures timely implemented, and it is so close in time so as to warrant an inference that Ms. Joseph Varlack's name being on the door might have been why the firm chose to take the case or why Defendants chose the firm.[4]

What is more, the declarations here do *not* show that Avangrid's information was isolated. Aside from the facts that the conflicted attorney has not provided a declaration and that Ms. Chong's declaration establishes that the firm's Director of Operations had access to Avangrid board documents and then worked on this case, Mr. Bradford's declaration indicates that the firm was aware of the board service issue from the moment Defendants approached him

---

2016 WL 727171, at *5 (E.D.N.Y. Feb. 23, 2016), or a London partner of a large firm who had no interactions with a New York-based case team, as in *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 347 (S.D.N.Y. 2011).

[4] Mr. Bradford describes the representation as "through serendipity." Doc. 50 ¶ 9. It may have been serendipitous from the firm's perspective, but perhaps not from Mr. Silva's.

but does not mention instituting any formal measures at that point. (Doc. 50 ¶ 9.) Mr. Edwards says that the purpose of Zoom calls was to discuss current firm matters, but that statement stops somewhat short of an unequivocal denial that Avangrid ever came up in conversation. (Doc. 51 ¶ 5.) And Mr. Bradford does not say anything at all about conversations in which Avangrid might have come up. (Doc. 50 ¶ 6.) In short, the declarations are far from clear and unequivocal statements that there was no risk of information leakage, even were it possible to ignore Ms. Chong's access to Avangrid documents yet her also working against Avangrid here.

The burden to rebut the presumption of shared confidences is high for a reason. Avangrid does not have visibility inside Bradford, Edwards & Varlack, and the lack of formal screening measures together with the admission that Ms. Chong has Avangrid documents while working on this case mean that Avangrid has little comfort that its confidences will stay that way. And it need not prove that the firm is intentionally abusing its access to Avangrid information—the Second Circuit has held that "[a] lawyer's good faith" is "an inadequate safeguard when standing alone" because "[e]ven the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence." *Emle*, 478 F.2d at 571. Here, Defendants have not convincingly shown that Ms. Joseph Varlack's confidential Avangrid information stayed fully isolated within the firm; as such, protecting Avangrid's confidences requires disqualification.

## CONCLUSION

For the foregoing reasons, this Court should enter an order disqualifying Bradford, Edwards & Varlack LLP as counsel for Defendants and stay the case so that Defendants can find unconflicted replacement counsel.

Dated: June 13, 2023

                        Respectfully submitted,

                        STEPTOE & JOHNSON LLP

                        /s/ Joseph M. Sanderson
                        Robert W. Mockler
                        Joseph M. Sanderson
                        1114 Avenue of the Americas
                        New York, NY 10036
                        rmockler@steptoe.com
                        josanderson@steptoe.com
                        (212) 506-3900

                        -and-

                        Thomas Watson (pro hac vice)
                        633 West Fifth Street, Suite 1900
                        Los Angeles, CA 90071
                        twatson@steptoe.com
                        (213) 439-9417

                        Counsel for Plaintiffs AVANGRID
                        NETWORKS, INC.; and AVANGRID
                        SERVICE COMPANY