**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AVANGRID NETWORKS, INC., and AVANGRID SERVICE COMPANY,<br><br><br>                       Plaintiff,<br><br>      - against -<br><br>SECURITY LIMITS, INC. and PAULO SILVA,<br><br>            Defendants. | Case No.  22 Civ. 9622 (AT) |
| SECURITY LIMITS, INC. and PAULO SILVA,<br><br><br>       Counterclaim Plaintiffs,<br><br>      - against -<br><br>AVANGRID, INC. and AVANGRID NETWORKS, INC, erroneously sued herein as AVANGRID NETWORK, INC.,<br><br>         Counterclaim Defendants. | |

**AVANGRID NETWORKS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 2

III.    LEGAL STANDARD ................................................................................................. 7

IV.     ARGUMENT .............................................................................................................. 7

        A.      SLI and Silva Fail to Plead Actionable RICO claims. ................................... 8

                1.      SLI and Silva Have Not Pleaded the Required Elements of RICO
                        Predicates. ............................................................................................. 8

                        a.      There Is No Extortion by Fear of Economic Loss Under the Hobbs
                                Act or New York Law Because SLI and Silva Were Not Entitled to
                                a Contract. ....................................................................................... 9

                        b.      The New Mexico Lawsuit and Responses to Regulators Are Not
                                Extortion. ....................................................................................... 12

                        c.      The Trade Secrets Predicates Are Inadequately Pleaded and
                                Licensed by the EULA .................................................................. 14

                        d.      There Is No Wire or Mail Fraud, as SLI and Silva Fail to Specify
                                How Avangrid's "Rigged" Contract Award Process Is a Scheme to
                                Defraud. ......................................................................................... 15

                        e.      SLI and Silva Do Not and Cannot Allege a Pattern of RICO
                                Predicate Activities. ...................................................................... 17

                2.      SLI and Silva Have Not Shown Injury Because SLI Cannot Show That It
                        Would Have Gotten a Contract From Avangrid. ................................. 18

                3.      Because SLI and Silva Have Not Shown a RICO Violation, Their
                        Conspiracy Counterclaim Fails as Well.............................................. 19

        B.      **The** RICO Claims Are Time-Barred. ............................................................. 19

        C.      The Defamation Counterclaims Fail on Every Conceivable Level. .............. 21

        D.      SLI and Silva's Tortious Interference Claims Fail for Multiple Reasons Too.... 22

        E.      The Contract Counterclaims Are Belied by the Terms of the EULA ............... 23

        F.      The Miscellaneous Unnumbered Counterclaims Are Entirely Conclusory. ......... 26

V.      CONCLUSION ......................................................................................................... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*236 Cannon Realty, LLC v. Ziss*,
 No. 02 Civ. 6683 (WHP), 2005 WL 289752 (S.D.N.Y. Feb. 8, 2005) ...................................16

*600 W. 115th St. Corp. v. Von Gutfeld*,
 80 N.Y.2d 130 (1992) ............................................................................................................21

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
 483 U.S. 143 (1987) ...............................................................................................................20

*Am. Sur. Co. of N.Y. v. Pauly*,
 170 U.S. 133 (1898) ...............................................................................................................12

*Apparel Art Int'l, Inc. v. Jacobson*,
 967 F.2d 720 (1st Cir. 1992) (Breyer, C.J.) ........................................................................18

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..................................................................................................................7

*Backman v. Polaroid Corp.*,
 910 F.2d 10 (1st Cir. 1990) (en banc) ..................................................................................17

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
 667 F. Supp. 3d 83 (S.D.N.Y. 2023)...............................................................................16, 18

*Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*,
 259 F. Supp. 3d 16 (S.D.N.Y. 2017), *aff'd,* 712 F. App'x 85 (2d Cir. 2018)........................23

*Black v. Ganieva*,
 619 F. Supp. 3d 309 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL
 2317173 (2d Cir. Mar. 2, 2023) ............................................................................................19

*Bouveng v. NYG Cap. LLC*,
 175 F. Supp. 3d 280 (S.D.N.Y. 2016)....................................................................................13

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
 140 F.3d 494 (3d Cir. 1998)...............................................................................................9, 11

*Clark-Fitzpatrick, Inc. v Long Island R.R. Co.*,
 70 N.Y.2d 382 (1987) ............................................................................................................26

*Clarke v. Clarke*,
 237 A.D.3d 1039 (2d Dep't 2025) .........................................................................................26

*Connaughton v. Chipotle Mexican Grill, Inc.*,
   135 A.D.3d 535 (1st Dep't 2016), *aff'd*, 29 N.Y.3d 137 (2017) ............................................26

*Credit All. Corp. v Sheridan Theatre Co.*,
   241 N.Y. 216 (1925) ............................................................................................................12, 26

*Democratic Nat'l Comm. v. Russian Fed'n*,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019)...........................................................................................18

*In re Elysium Health-Chromadex Litig.*,
   354 F. Supp. 3d 330 (S.D.N.Y. 2019)...........................................................................................13

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
   902 F.3d 132 (2d Cir. 2018).........................................................................................................15

*Est. of Hevia v. Portrio Corp.*,
   602 F.3d 34 (1st Cir. 2010)...........................................................................................................24

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004)............................................................................................................7

*Galarneau v. D'Andrea*,
   184 A.D.3d 1064 (3d Dep't 2020) ...............................................................................................25

*Gerstenfeld v. Nitsberg*,
   190 F.R.D. 127 (S.D.N.Y. 1999) ................................................................................................16

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490 (1949)......................................................................................................................13

*Great Minds v. Fedex Off. & Print Servs., Inc.*,
   886 F.3d 91 (2d Cir. 2018)...........................................................................................................24

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
   50 N.Y.2d 183 (1980).............................................................................................................22, 23

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989)......................................................................................................................17

*Hayden v. Cnty. of Nassau*,
   180 F.3d 42 (2d Cir. 1999).............................................................................................................3

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988)........................................................................................................................23

*Kerik v. Tacopina*,
   64 F. Supp. 3d 542 (S.D.N.Y. 2014)......................................................................................12, 13

*Kesner v. Dow Jones & Co., Inc.*,
   No. 22-875, 2023 WL 4072929 (2d Cir. June 20, 2023) ......................................................22

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997) ..............................................................................................................21

*Kramer v. Greene*,
   142 A.D.3d 438 (1st Dep't 2016) ..........................................................................................25

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991) ....................................................................................................3

*Linkable Networks, Inc. v. Mastercard Inc.*,
   184 A.D.3d 418 (1st Dep't 2020) ..........................................................................................23

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013) ..................................................................................................16

*Marine Midland Bank-Southern v. Thurlow*,
   53 N.Y.2d 381 (1981) ............................................................................................................25

*Mathon v. Feldstein*,
   303 F. Supp. 2d 317 (E.D.N.Y. 2004) ...................................................................................10

*McDonald v. Smith*,
   472 U.S. 479 (1985) ..............................................................................................................13

*McElwee v. Aldersgate Life Plan Servs., Inc.*,
   No. 3:24-CV-00288-KDB-SCR, 2024 WL 4438673 (W.D.N.C. Oct. 7, 2024) .....................18

*Menasco, Inc. v. Wasserman*,
   886 F.2d 681 (4th Cir. 1989) ................................................................................................18

*Moss v. Morgan Stanley Inc.*,
   719 F.2d 5 (2d Cir. 1983) ..................................................................................................8, 18

*Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*,
   420 F. Supp. 2d 253 (S.D.N.Y. 2006) ...................................................................................19

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ..................................................................................................17

*Park S. Assocs. v. Fischbein*,
   626 F. Supp. 1108 (S.D.N.Y. 1986), *aff'd*, 800 F.2d 1128 (2d Cir. 1986) ...........................12

*People v. Dioguardi*,
   8 N.Y.2d 260 (1960) ..............................................................................................................10

*Perry v. McMahan*,
  164 A.D.3d 1486 (2d Dep't 2018) ................................................................26

*Pro. Real Estate Inv., Inc. v. Columbia Pictures Indus.*,
  508 U.S. 49 (1993) ........................................................................................13

*Rotella v. Wood*,
  528 U.S. 549 (2000) ......................................................................................20

*Scheidler v. Nat'l Org. for Women, Inc.*,
  537 U.S. 393 (2003) ......................................................................................11

*Sekhar v. United States*,
  570 U.S. 729 (2013) ......................................................................................11

*Serin v. N. Leasing Sys.*,
  06 Civ. 1625 (SCR), 2008 WL 11627872 (S.D.N.Y. Sept. 3, 2008) .................12

*Spiteri v. Russo*,
  No. 12-CV-2780-MKB-RLM, 2013 WL 4806960 (E.D.N.Y. Sept. 7, 2013),
  *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015) .................11

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008) .........................................................................16

*Steinhilber v. Alphonse*,
  68 N.Y.2d 283 (1986) ...................................................................................21

*Stratford Materials Corp. v. Jones*,
  118 A.D.2d 559 (2d Dep't 1986) ..................................................................23

*Syllman v. Nissan*,
  18 A.D.3d 221 (1st Dep't 2005) ....................................................................27

*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*,
  68 F.4th 792 (2d Cir. 2023) ..........................................................................15

*Thomas v. Westchester Cnty. Health Care Corp.*,
  232 F. Supp. 2d 273 (S.D.N.Y. 2002) .............................................................6

*United States v. Burhoe*,
  871 F.3d 1 (1st Cir. 2017), *clarified on denial of reh'g*, 877 F.3d 1069 (1st
  Cir. 2017) ....................................................................................................11

*United States v. Capo*,
  791 F.2d 1054 (2d Cir. 1986), *rev'd on other grounds*, 817 F.2d 947 (2d Cir.
  1987) (en banc) .............................................................................................9

*United States v. Capo*,
    817 F.2d 947 (2d Cir. 1987)...........................................................................10

*United States v. Clemente*,
    640 F.2d 1069 (2d Cir. 1981)...........................................................................9

*United States v. Enmons*,
    410 U.S. 396 (1973)...........................................................................................9

*United States v. Minicone*,
    960 F.2d 1099 (2d Cir. 1992)..........................................................................18

*United States v. Strock*,
    982 F.3d 51 (2d Cir. 2020)...............................................................................7

*Viacom Int'l v. Icahn*,
    747 F. Supp. 205 (S.D.N.Y. 1990), aff'd, 946 F.2d 998 (2d Cir. 1991)...................9

*Zabit v. Brandometry, LLC*,
    540 F. Supp. 3d 412 (S.D.N.Y. 2021)..............................................................14

*Zebra Strategies, Inc. v. Gonzalez-Nazario*,
    764 F. Supp. 3d 144 (S.D.N.Y. 2025)..............................................................15

**Statutes**

18 U.S.C. § 1832.......................................................................................................14

18 U.S.C. § 1839.......................................................................................................14

18 U.S.C. § 1951.........................................................................................................9

18 U.S.C. § 1961.........................................................................................................8

18 U.S.C. § 1962..................................................................................................18, 19

CPLR 214..................................................................................................................23

CPLR 215..................................................................................................................22

N.M. Stat. § 38-2-9.1 .............................................................................................6, 13

N.Y. Civ. Rts. Law § 74.......................................................................................21, 22

N.Y. Civ. Rts. Law § 76-a(1)(a)(2)............................................................................22

N.Y. Civ. Rts. Law § 76-a(2)......................................................................................22

**Other Authorities**

16 N.Y.C.R.R. § 215.1 ..................................................................................................10

Fed. R. Civ. P. 8 ..........................................................................................................26

Fed. R. Civ. P. 9(b) ......................................................................................7, 16, 24, 26

Fed. R. Civ. P. 12(b)(6) ..................................................................................................7

## I.    INTRODUCTION

The Amended Counterclaims are the latest attempt by Paulo Silva and his company Security Limits Inc. ("SLI") to bring RICO claims against various affiliates of the sustainable energy company Avangrid, Inc.[1] SLI worked as a small subcontractor to two contractors on an Avangrid project; the relationship with the second one, Unlimited Technology, Inc. ("Unlimited"), ended contentiously. SLI submitted a bid for a lucrative contract on a different Avangrid project and was ultimately not selected. Ever since, Silva has accused Avangrid of conspiring with other contractors to deny him the contract and has accused Avangrid and its affiliates and executives of assorted wrongdoing in a wide range of forums.

SLI and Silva's Amended Counterclaims largely rehash a lawsuit they filed in 2021, touted to the media, and then voluntarily dismissed. Even after the 2021 filing and two attempts to plead them in this case, the assertions remain incoherent and meritless. They are long on rambling accusations of miscellaneous wrongdoing that has nothing to do with SLI or Silva and short on pleaded facts to support Silva's basic theory that he would have gotten a lucrative contract but for some grand conspiracy against him.

The Counterclaims fail on every level. SLI and Silva fail to plausibly plead any RICO predicate. Instead, they plead only conclusory speculation that SLI would have gotten the contract without the supposed conspiracy against him. And they identify only an isolated dispute about contract tenders rather than any broader pattern of racketeering activity. The RICO claims are also time-barred; these are the same allegations from 2018-19 that Silva and SLI alleged in 2021 before giving up.

---

[1] Moving party Avangrid Networks, Inc. is the only served Counter-Defendant. Avangrid, Inc. is named in the Amended Counterclaims but still has not been served. It is also non-diverse, so the sole basis asserted for subject-matter jurisdiction against it is the RICO Counterclaim.

By the same token, the defamation claims challenge vague expressions of negative opinions of Silva and SLI, fail to identify any specific factual statement about them, and fail to comply with New York's statutory actual malice requirement for matters of public interest (like lawsuits and utilities regulation). The defamation claims are also time-barred. The tortious interference claim fails to plead disinterested malice or unlawful means and is in any event a defamation claim by another name, since it alleges reputational damage because of Avangrid entities allegedly criticizing Silva, and is also time-barred. The contract claim is belied by the terms of the contract, which explicitly licenses the IP at issue. The remaining laundry-list of unnumbered claims are entirely conclusory. Silva and SLI had ample opportunity to cure these defects in the letter-exchange process. They did not, and cannot, do so. The Motion to Dismiss should be granted.

## II.    BACKGROUND

While the Counterclaims are convoluted and spend pages alleging unconnected wrongdoing against Avangrid and others—including a detour into a later proposed merger—the allegations relevant to the claims discernably asserted in the Counterclaims are as follows.[2]

Avangrid, Inc., which is named a counterclaim defendant but has not been served, is a leading sustainable energy company, with subsidiaries including moving defendant Avangrid Networks, Inc. ("Networks," and together with Avangrid, Inc., and its other affiliates, "Avangrid"). Defendant Security Limits Inc. ("SLI") was a former subcontractor to Avangrid, with Paulo Silva ("Silva") as SLI's principal (collectively "Defendants"). Avangrid, Inc. in turn is owned by non-party Iberdrola, S.A. Countercl. ¶¶ 163-165.

---

[2] In addition to pages of unconnected allegations about securities law that appear to be screenshots from a different lawsuit, *e.g.*, Counterclaims ¶¶ 162-178, the Counterclaims frequently state that other entities are defendants when they are not. *E.g.*, *id.* ¶¶ 202-03, 210-11. They also reference numerous non-existent exhibits throughout.

SLI and Silva originally filed suit on November 29, 2021, alleging a conspiracy between Avangrid and certain contractors to divert contracts that they believed that they should have gotten away from them, labeling it "bid-rigging." Weir Decl. Ex. 1. That complaint asserted several causes of action that include RICO violations, breach of contract, misappropriation of trade secrets, tortious interference with prospective business advantage, and unjust enrichment. *Id.*[3] SLI and Silva voluntarily dismissed the 2021 action. Weir Decl. Ex. 2.

This case, much like the 2021 lawsuit, principally alleges that SLI should have been awarded a contract as a prime contractor but that some Avangrid employees told him that he would not get a prime contract and should instead work for other bidders as a subcontractor.

SLI and Silva allege that in 2018 an Avangrid employee, David Lathrop, sought their services as a subcontractor to SNC-Lavalin (SNC) on a cybersecurity contract, supposedly because SNC was not meeting expectations. Countercl. ¶ 193. SLI and Silva claim that SLI created the Avangrid Secure Domain (ASD) using SLI's Ironclad software and that "consistent with these achievements," Avangrid licensed the technology and entered into the End User License Agreement ("EULA") with SLI in February 2019. *Id.* ¶ 196. The EULA is referenced in the Counterclaims but not attached.[4] It provides that:

**GRANT**

For the purpose of this Agreement, the term "Product" shall mean "Ironclad®", the product name given by Security Limits Inc. for its Intellectual Property, a collection of "Procedural Artifacts, Architectural Material(s) and Design Specifications Utilized in Building a Secure Hyper-Converged Virtualized Infrastructure, specifically Designed for Hosting Industrial Control Systems".

---

[3] That these allegations were made is subject to judicial notice. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

[4] Materials incorporated by reference may be considered on a motion to dismiss. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

**TERMINATION**
Licensed to AVANGRID and its subsidiaries in perpetuity WITHOUT termination". Security Limits Inc. All copyrights® reserved.

The EULA further provides:

> _AVANGRID INC. has unrestricted rights to utilize and modify the design for its own benefit or for the benefit of its operating companies, subsidiaries,_

Weir Decl. Ex. 5.

SLI later entered into a subcontract with a new prime contractor, Unlimited, in March 2019. Weir Decl. Ex. 7; Countercl. ¶ 198. Again, SLI and Silva do not attach either the contract they reference or the prime contract incorporated into the subcontract, likely because they too contain numerous provisions providing for Avangrid's ownership of intellectual property in connection with the project.

SLI and Silva's subcontract was part of Phase I, and Avangrid later solicited bids for Phase II of the project. _Id._ ¶ 199. They allege that under Avangrid's procurement system (what terms or policies they do not say), and under unspecified "statutory procurement guidelines" and "the United Nations Sustainability Goals," Avangrid was "obligated" to issue requests for proposals ("RFPs") that prospective vendors respond to by submitting bids. _Id._ ¶¶188-89, 199. They do not plead any specific legal obligation, policy or bidding term that would require Avangrid to award a contract on each RFP or that would require them to pick SLI if they did. Nevertheless, they allege that SLI was "an obvious choice" when it submitted its bid on February 18, 2019, apparently because Avangrid had expressed "enthusiasm" over SLI's earlier performance with the ASD and the Ironclad design. _Id._ ¶¶ 200-201.

According to SLI and Silva, Lathrop and Senior Telecom Director Tom Fitzgerald encouraged SLI to bid on the Advanced Metering Infrastructure ("AMI") project, a $45 million

opportunity. *Id.* ¶ 212. They claim that although SLI's proposal was "technically superior" in unspecified ways, Lathrop and Fitzgerald directed SLI to step aside as a prime bidder and turn over its bid package to Black & Veatch ("B&V"), including "proprietary methodologies, designs, and pricing." *Id.* ¶ 212. SLI and Silva allege that on or about April 3, 2019, Lathrop and Fitzgerald "threatened" that SLI would not get a contract if it did not work with B&V as prime contractor. *Id.* ¶ 212. They do not explain what power Lathrop or Fitzgerald had over the bidding process or whether a bid in partnership with a large, established contractor would be likelier to prevail. They claim that, fearing they would not get the contract otherwise, SLI provided B&V with unspecified confidential work product under unspecified circumstances and terms. *Id.* ¶ 212.

SLI and Silva also allege that Lathrop and Avangrid employee John Allen introduced Silva to Prosegur and its security subsidiary Cipher. *Id.* ¶ 203. Then, in August 2019, Cipher and SLI executed a Mutual Confidentiality Agreement (the "NDA") on unspecified terms, which SLI and Silva allege was in anticipation of a possible collaborative bid. *Id.* ¶ 203. Defendants claim that, in reliance on the NDA, SLI provided confidential information and that Prosegur and Cipher used it. *Id.* Defendants appear to contend that the fear that they would not get a contract without teaming up with a prime contractor coerced them into this partnership, apparently making whatever dispute SLI has with Prosegur and Cipher into Avangrid's responsibility. *Id.*

Much as they did back in 2021, SLI and Silva characterize certain Avangrid employees' supposed belief that SLI was likelier to get a contract as a subcontractor rather than on its own as "bid-rigging" and their competitors' bids as "improper." *Id.* ¶¶ 201-02. Beyond those labels, however, they never explain what this means or what specific contracts, policies, or regulations would prevent Avangrid from doing business (or not) with whatever company it chooses. They appear to claim that, if B&V or Prosegur used information SLI shared with them (under

unspecified terms) to submit bids to Avangrid, Avangrid would somehow become responsible for B&V or Prosegur's supposed misuse of SLI's information. *Id.* They conclusorily allege that under a fair bidding process, SLI would have gotten the contract. *Id.* ¶ 202.

Twice in 2021, Silva appeared before the New Mexico Public Regulation Commission ("NMPRC") during a public comment period and accused Avangrid of illegal conduct. *Id.* ¶¶ 179-180. Avangrid sued Silva in New Mexico, alleging that Silva had attempted to extort Avangrid for a contract by (among other things) sending an email in which he both demanded a contract and informed Avangrid he planned to make statements to the NMPRC, and that his public statements were defamation. Weir Decl. Ex. 3 (operative New Mexico complaint).[5] Ultimately, the New Mexico courts determined that Silva was immune from liability under their interpretation of the *Noerr-Pennington* doctrine and that Avangrid had not sufficiently pleaded any exception to that doctrine. Weir Decl. Ex. 4. Because the claim challenged speech at a public hearing, New Mexico law imposes automatic and mandatory fee-shifting. N.M. Stat. § 38-2-9.1. None of the New Mexico courts found Avangrid's claims to be frivolous or subjectively ill-intentioned.

Finally, SLI and Silva claim that Avangrid's response to their voluntarily-dismissed 2021 complaint—denying liability, informing regulators to whom Silva had complained and others who inquired that Avangrid believed his claims lacked merit and that Silva was a disgruntled former subcontractor, and filing the New Mexico lawsuit—was a "sham." *Id.* ¶¶ 179, 221. They claim Avangrid's denials harmed their reputation and caused an acquisition of SLI to fall through. *Id.* ¶ 221. The only discernable allegations in support of this "sham" label appear to be that (1) the New

---

[5] The New Mexico complaint is referenced repeatedly and forms the basis of several of SLI and Silva's claims. Its contents (though not the truth of its allegations) are thus incorporated by reference. *See Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275-76 (S.D.N.Y. 2002).

Mexico lawsuit was dismissed, triggering automatic fee-shifting by statute because it involved a public hearing; (2) Avangrid informed a Maine regulator of the New Mexico lawsuit but not of certain discovery responses; and (3) SLI and Silva believe that Avangrid's denials are disingenuous. *Id.* ¶¶ 215, 229.

After SLI and Silva filed their Counterclaims, the parties engaged in a pre-motion letter exchange. While they failed to amend after the first letter exchange, when Avangrid filed its second pre-motion letter with the Court, Doc. 63, SLI and Silva amended their counterclaims, Docs. 64, 66-67. After another round of letter exchanges, Docs. 75, 78, SLI and Silva declined to further amend their counterclaims.

## III.    LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That requires enough factual content "to draw the reasonable inference that the defendant is liable." *Id.*

Several Counterclaims sound in fraud, which must be pleaded with particularity. Fed. R. Civ. P. 9(b). These claims must detail what statements are allegedly fraudulent; who communicated them; where and when they were made; and why they were fraudulent. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004). They must also allege facts that give rise to a strong inference of fraudulent intent. *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020).

## IV.    ARGUMENT

SLI and Silva's lengthy sliming of Avangrid and others with unconnected supposed wrongdoing cannot hide the fundamental flaws in their Counterclaims. The claims they allege contain remarkably few factual allegations, often ignoring multiple elements or pleading only

conclusory generalities rather than facts that plausibly allege actionable conduct. Some claims are bare labels without any elements pleaded at all. And many of them allege conduct that supposedly occurred long ago, and far outside the limitations period.

      **A.**      **SLI and Silva Fail to Plead Actionable RICO claims.**

A civil RICO claim requires "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise'(7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). "Racketeering activity" consists of any act that is "indictable" under the criminal provisions listed in 18 U.S.C. § 1961.

Here, SLI and Silva fail to plausibly plead that Avangrid committed any RICO predicates; fail to show that an isolated dispute between Avangrid and one disappointed subcontractor is part of a pattern of racketeering activity; and fail to plausibly plead an injury caused by a violation of the RICO statute, given that their allegations they would have received a contract otherwise are entirely conclusory.

      **1.**      **SLI and Silva Have Not Pleaded the Required Elements of RICO Predicates.**

To start, SLI and Silva do not sufficiently allege any RICO predicates. The only discernable predicates asserted are extortion under the Hobbs Act and New York law, criminal trade secrets theft, and wire and mail fraud. Countercl. ¶¶ 228(a)-(d). Multiple elements are either not alleged at all or alleged only in the most conclusory manner that does not satisfy RICO or the applicable pleading standard.

a.    **There Is No Extortion by Fear of Economic Loss Under the Hobbs Act or New York Law Because SLI and Silva Were Not Entitled to a Contract.**

SLI and Silva allege that Avangrid committed Hobbs Act extortion or New York's equivalent, larceny by extortion, by characterizing as a threat Lathrop's supposed statement that SLI would not get a contract without a prime contractor. *See id.* ¶¶ 228(a)-(b).

Even if that could be viewed as a threat, that theory fails because SLI had no property right to obtain a contract. Hobbs Act extortion requires "the obtaining of property" by, among other things, "fear." 18 U.S.C. § 1951(b)(2). That requires *both* "the use of wrongful means" and that it be "to achieve a wrongful objective." *United States v. Clemente*, 640 F.2d 1069, 1076 (2d Cir. 1981) (citing *United States v. Enmons*, 410 U.S. 396 (1973)). It is essential that "the alleged extortionist has no lawful claim." *Enmons*, 410 U.S. at 400. So, courts consistently hold that threatening to do what one believes one has the right to do is not "wrongful use of… fear." *Viacom Int'l v. Icahn*, 747 F. Supp. 205, 210 (S.D.N.Y. 1990), *aff'd*, 946 F.2d 998 (2d Cir. 1991). A job applicant's fear of unemployment does not prevent an employer from refusing to hire them except on tough terms, or that it cannot engage in "hard-bargaining" like offering a lower salary. *Id.* at 213 (citing *United States v. Capo*, 791 F.2d 1054, 1062-1063 (2d Cir. 1986), *rev'd on other grounds*, 817 F.2d 947 (2d Cir. 1987) (en banc) (charging job applicants to improve prospects of winning employment was not extortion). If "the alleged victim has no pre-existing right to pursue his business interests free of the fear he is quelling by receiving value in return for transferring property to the defendant," then there is no extortion. *Id.* at 213. After all, "the use of economic fear in business negotiations between private parties is not 'inherently' wrongful" and instead "the fear of economic loss is a driving force of our economy that plays an important role in may legitimate business transactions." *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 523 (3d Cir. 1998); *see id.* at 526 (no extortion when regulations did not provide a right to a

contract; no right to "contracts on a level playing field" in the private sector). There must also be intent to exploit that wrongful use of fear. *United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987). New York's state extortion statute, the Hobbs Act's model, has similar elements, including an identical wrongful-use-of-fear requirement. *People v. Dioguardi*, 8 N.Y.2d 260, 268 (1960); *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 324 (E.D.N.Y. 2004).

Labels and epithets aside, the Counterclaims contain nothing that shows that whatever Lathrop may have said about SLI's prospects of winning the contract was wrongful use of fear rather than simply describing business decisions that Avangrid had the right to make. The Counterclaims point to nothing—no policy, no contract terms, no specific law or regulation—that says that it would be improper for Avangrid to prefer large, established prime contractors it has worked with before over a newcomer. SLI and Silva do not (and cannot) plead a *right* (rather than hope) for SLI to get a contract in the future. Nor do they plead any specific metrics by which one bid's superiority over another would be judged. Alleging that SLI had submitted a bid, Countercl. ¶¶ 200, 212, 228(b), does not plead that it had the right to obtain a contract based on that bid. Conclusory assertions that SLI was an "obvious choice" or "technically superior," *id.* ¶¶ 200, 212, are subjective labels, not facts alleging that Avangrid had no right to prefer B&V or Prosegur (or not award a contract at all). SLI's belief that its bid was superior does not make it so, let alone make it wrongful to deny SLI a contract. So the Counterclaims do not plead any facts plausibly showing that what Lathrop was supposedly threatening was something that Avangrid had no right to do.

The closest SLI and Silva get to a legally-protected right is a generic assertion that Lathrop violated regulations governing public utility bidding procedures that require filing of certain procurement procedures under 16 N.Y.C.R.R. § 215.1. However, they fail to explain why what

Lathrop suggested violated those regulations, what the procedures required, or why SLI had a right to a contract under the as-filed procedures. That falls far short of, say, a statute giving an absolute right to a contract to a qualified party. *See Brokerage Concepts*, 140 F.3d at 526 (contrasting statutes that give physicians meeting specified criteria right to join HMO network).

Nor do SLI and Silva allege the required mental state. "[T]he use of legitimate economic threats" to procure property is wrongful under the Hobbs Act only if "the defendant has no claim of right to that property and knew as much." *United States v. Burhoe*, 871 F.3d 1, 9 (1st Cir. 2017), *clarified on denial of reh'g,* 877 F.3d 1069 (1st Cir. 2017). Nothing in the Counterclaims alleges, even conclusorily, that Avangrid knew it had no right to deny SLI a contract.

Additionally, SLI and Silva fail to plead that *Avangrid* obtained property. It is essential that the defendant have "gain[ed] possession" of the property, not just that the victim have lost possession. *Sekhar v. United States*, 570 U.S. 729, 734 (2013); *accord Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 403 (2003) (noting that this requirement was adopted into the Hobbs Act from New York's extortion statute). "[C]oercion without the transfer of property or an attempt to obtain property is not extortion and not a RICO predicate act." *Spiteri v. Russo*, No. 12-CV-2780-MKB-RLM, 2013 WL 4806960, at *48 n.55 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015). Taken liberally, Defendants seem to suggest that *B&V or Prosegur* got some sort of intellectual property from SLI, but they do not allege that *Avangrid* got anything (other than the IP already licensed to it under the EULA). To the contrary, the implication appears to be that Avangrid *lost* property, getting a worse deal than SLI's supposedly-superior bid, because of allegedly disloyal employees.

SLI and Silva also fail to allege that *Avangrid* performed the predicate acts. The Counterclaims do not seem to allege any particular benefit to Avangrid of getting a supposedly-

worse deal; rather, it vaguely suggests that certain Avangrid employees were too friendly with competing bidders. But if the implication is that these employees were selling out Avangrid to benefit SLI's competitors, then that would make Avangrid another victim, not a perpetrator. "When an agent abandons the object of his agency and acts for himself, by committing a fraud for his own exclusive benefit, he ceases to act within the scope of his employment and, to that extent, ceases to act as agent." *Credit All. Corp. v Sheridan Theatre Co.*, 241 N.Y. 216, 220 (1925); *see Am. Sur. Co. of N.Y. v. Pauly*, 170 U.S. 133, 157 (1898) (no attribution of acts of agent "engaged in a scheme to defraud his principal").

### b.  The New Mexico Lawsuit and Responses to Regulators Are Not Extortion.

SLI and Silva characterize as extortion Avangrid's litigation and public relations history since SLI filed its initial, voluntarily-dismissed complaint. Countercl. ¶ 228(a). None of their allegations allege that Avangrid obtained property from SLI or Silva or that Avangrid made *threats* (rather than just asking a court to award them damages), so they plainly fail to plead the extortion predicates. Filing a lawsuit is not extortion. *Park S. Assocs. v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986), *aff'd*, 800 F.2d 1128 (2d Cir. 1986); *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 561 (S.D.N.Y. 2014) ("[A] threat of litigation, even if it is meritless, does not constitute 'wrongful use of actual or threatened force, violence, or fear.'"); *Serin v. N. Leasing Sys.*, 06 Civ. 1625 (SCR), 2008 WL 11627872, at *3 (S.D.N.Y. Sept. 3, 2008).

At any rate, that the lawsuit ultimately failed—because the New Mexico courts held that a statement during a public comment period was constitutionally immune from liability under the Petition Clause—does not make it "wrongful" for Hobbs Act or larceny-by-extortion purposes. A "lawsuit filed by lawful means is not 'wrongful,' as defined by the Hobbs Act, and courts would be wary of holding that 'the filing of a meritless lawsuit is… extortionate lest every unsuccessful

lawsuit lead to an extortion claim and thus chill resort to the courts.'" *Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 320 (S.D.N.Y. 2016) (*quoting Kerik*, 64 F.Supp.3d at 561). The same *Noerr-Pennington* doctrine that Silva and SLI successfully convinced the New Mexico courts immunized Silva's statements also protects Avangrid's petitioning of New Mexico's courts. *In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 335 (S.D.N.Y. 2019).

While Avangrid's lawsuit was dismissed, SLI and Silva allege nothing beyond the bare label to substantiate their argument that the "sham" exception to the doctrine applies. Under that exception, a lawsuit must have been "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and if so, what the "litigant's subjective motivation" was in filing the suit. *Pro. Real Estate Inv., Inc. v. Columbia Pictures Indus.* ("PRE"), 508 U.S. 49, 60 (1993). Here, while unsuccessful, the claim was not remotely frivolous. *McDonald v. Smith* holds that *Noerr-Pennington* does not apply to defamation and the Petition Clause provides no protection to petitioning speech above the general First Amendment limits on defamation. 472 U.S. 479 (1985). Similarly, the other claims alleged speech integral to criminal conduct—that Mr. Silva had demanded a contract in the same email where he threatened to slime Avangrid. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949). True, the New Mexico courts came out the other way, but that does not mean that no reasonable litigant could expect success. And while SLI was entitled to fee-shifting under New Mexico's anti-SLAPP statute because the claim involved a public comment session, that statute merely provides that if a motion to dismiss is granted in a case arising from speech at a public hearing, attorneys' fees must be awarded; no finding of frivolousness is required or was made. N.M. Stat. § 38-2-9.1.

> c.    **The Trade Secrets Predicates Are Inadequately Pleaded and Licensed by the EULA.**

SLI and Silva fail to allege what trade secrets were obtained, let alone that *Avangrid* obtained them or possessed the requisite mental state for criminal trade secrets theft. A trade secret is information with independent economic value from not being generally known or readily ascertainable through proper means and requires reasonable measures to keep the information secret. 18 U.S.C. § 1839(3)(a)-(b). Criminal trade secrets theft requires stealing, copying, or conveying trade secrets (or receiving trade secrets known to be stolen), with intent to convert and injury. 18 U.S.C. § 1832(a).

Here, SLI appears to allege that Avangrid's use of Ironclad or its documentation constitutes trade secret theft. Countercl. ¶ 228(c). But as the Counterclaims admit, SLI licensed it to Avangrid for the benefit of Avangrid and its affiliates. Weir Decl. Ex. 5. *See infra* § IV.E.[6]

SLI and Silva also allege that they shared trade secrets with B&V and Prosegur/Cipher under contracts whose terms they do not plead, and to which Avangrid was not a party. Countercl. ¶¶ 228(a)-(c). They do not plead that *Avangrid* received trade secrets without authorization. Nor do they plead that Avangrid knew that some unspecified part of B&V or Prosegur's bids supposedly reflected some equally unspecified trade secret that they had misappropriated from SLI or that Avangrid knew that B&V or Prosegur/Cipher had breached any terms under which they acquired the information. That does nothing to dispel the obvious inference that a company soliciting bids expects that bidders have the right to use information that they submit. *See Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 425 (S.D.N.Y. 2021). Indeed, because they do not plead

---

[6] The Counterclaims also screenshot an email from Silva to B&V making various demands of them and a separate email in which Lathrop copies Silva acknowledges that SLI is the IP owner. Countercl. ¶ 228(c). But the point is that the EULA licenses it.

the terms of the B&V and Prosegur/Cipher agreements, they do not even plead that the use of the unspecified purported trade secrets violated those agreements. They throw in a conclusory assertion that Avangrid and Prosegur "act[ed] in concert," Countercl. ¶ 228(c), but that is a mere label; no *facts* about any convoluted concerted plan for Avangrid to receive a bid it could have received directly instead through a different bidder are pleaded. Even if an Avangrid employee introduced Silva to companies he claims cheated him, that does not come close to pleading a concerted plan. In short, whatever dispute SLI and B&V or Prosegur may have, but it is not a predicate act by Avangrid.

Finally, SLI and Silva do not describe what trade secrets were obtained. A trade secret must be described with "sufficient specificity" so that its protectability can be assessed. *Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 154 (S.D.N.Y. 2025); *accord Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 800 (2d Cir. 2023) (Plaintiff "bears the burden of identifying a purported trade secret with sufficient specificity."). The supposed trade secrets are identified in the Counterclaims in the most general terms, such as "sensitive security architecture information;" "proprietary methodologies, designs, and pricing;" and "bid proposals, network designs, pricing models, and other confidential technical information." Countercl. ¶¶ 212, 228(c). This fails to plausibly allege what information was involved or meet the requirements for "sufficient specificity," and it fails to allege what reasonable measures SLI used to protect the vaguely-described information from becoming generally known.

### d. There Is No Wire or Mail Fraud, as SLI and Silva Fail to Specify How Avangrid's "Rigged" Contract Award Process Is a Scheme to Defraud.

SLI and Silva also fail to plead a scheme to defraud under the wire fraud and mail fraud statutes. Wire and mail fraud require: "(1) a scheme to defraud, (2) money or property that is the object of the scheme, and (3) use of the wires [or mail] to further the scheme." *Empire Merchs.,*

*LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 124 (S.D.N.Y. 2023). Since they sound in fraud, these allegations must meet Rule 9(b)'s particularity pleading standard. *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 119 (2d Cir. 2013). The allegations must state "the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent." *Bayshore Cap. Advisors,* 667 F. Supp. 3d at 124 (citing *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008)). Rule 9(b) requires pleading facts sufficient to create a strong inference of scienter. *See Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 128 (S.D.N.Y. 1999); *236 Cannon Realty, LLC v. Ziss*, No. 02 Civ. 6683 (WHP), 2005 WL 289752, at \*5-9 (S.D.N.Y. Feb. 8, 2005).

These allegations do not come close. What statement of fact was false? When was it made? By whom? Why was it false? Who relied on it? How? The Counterclaims do not say. Nor do the Counterclaims allege that Avangrid contemporaneously knew any statement to be false. Rather, SLI and Silva appear to loosely contend that their belief that they were well-placed to get a contract means that they must have been defrauded if they did not get the contract. But that does not allege fraud, and certainly not fraud *by Avangrid*. Even if Silva incorrectly believed that he was well-placed to win the contract, that is a subjective opinion, and he does not allege the belief was induced by any contemporaneously false statement of fact by Avangrid, let alone a strong inference that Avangrid knew the unspecified statements to be false when made.

Silva and SLI suggest at a different point that the Request for Proposals themselves was fraudulent, Countercl. ¶¶ 199, 223, but again do not specify a single statement of fact that was contemporaneously false and known to be so. Indeed, they plead no statements of fact in the RFPs themselves at all; the theory seems to be that if SLI was invited to bid, the fact that it did not get

the contract meant that the fix was in all along. This is, of course, nonsense. That no contract was ultimately issued under the RFP does not retroactively render any statement in the RFP knowingly false when they were made. *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (rejecting "fraud by hindsight"). To the extent that any communications are identified, they are later statements that a contract was not awarded on the tender, which the Counterclaims do not allege were false. *See* Countercl. ¶¶ 188-191, 228(d). Nor could it be remotely reasonable to rely on being invited to bid as a promise that one will get a contract.

Finally, Defendants seem to claim that Avangrid or affiliated companies made unspecified false statements to regulators, without explaining which specific statements were false, anything about scienter, or anything connecting supposed regulatory violations to harm to Silva or SLI. *See id.* ¶¶ 221, 229. At one point, they seem to suggest that it might be fraud for Avangrid to inform Maine regulators of its lawsuit without providing discovery responses, *id.* ¶ 229, which is simply wrong. *Cf. Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc) ("This, however, does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise, but means only such others, if any, that are needed so that what was revealed would not be 'so incomplete as to mislead.'"). RICO is not a private right of action for utility regulations, let alone ones with no direct connection to Silva or SLI.

   e.    **SLI and Silva Do Not and Cannot Allege a Pattern of RICO Predicate Activities.**

At its core, SLI and Silva allege an isolated dispute over two contract tenders; accordingly, they fail to allege a pattern. To engage in a "pattern of racketeering activity" under RICO, it must be shown that the "racketeering predicates are *related* and that they amount to, or threaten the likelihood of, *continued* criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis added). "[R]elatedness" means that the racketeering acts are related to each other

-17-

("horizontal" relatedness) and to the enterprise ("vertical" relatedness). *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992). Under the "continuity" requirement, there must either be repeated racketeering activity extending over a substantial period of time or racketeering activity that by its nature projects into the future with a threat of repetition. *Bayshore Cap. Advisors,* 667 F. Supp. 3d at 134; *see also Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 445 (S.D.N.Y. 2019).

Here, an isolated dispute over two RFPs fails to show continuity of predicate activities with horizontal and vertical relatedness over a substantial period of time. *See, e.g.*, *McElwee v. Aldersgate Life Plan Servs., Inc.*, No. 3:24-CV-00288-KDB-SCR, 2024 WL 4438673, at *5 (W.D.N.C. Oct. 7, 2024) ("[E]ven repeated instances of mail and wire fraud do not violate RICO if they are part of a single, isolated dispute[.]"); *Apparel Art Int'l, Inc. v. Jacobson*, 967 F.2d 720, 723 (1st Cir. 1992) (Breyer, C.J.) (courts "have consistently held that a single episode does not constitute a 'pattern,' even if that single episode involves behavior that amounts to several crimes (for example, several unlawful mailings)."); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) ("single fraudulent goal" to defraud a "single set of victims" with a "limited purpose" to obtain their oil interests was not a "pattern"). SLI and Silva also do not dispute that Avangrid primarily conducts a legitimate business, which undermines any assertion that their allegations are vertically related to the enterprise. *See* Countercl. ¶¶ 186-88.

### 2.    SLI and Silva Have Not Shown Injury Because SLI Cannot Show That It Would Have Gotten a Contract From Avangrid.

SLI and Silva fail to plead a valid RICO injury because they do not show that they were entitled to a contract. They must also plead plausibly that a violation of § 1962 caused injury. *Moss*, 719 F.2d at 17. To satisfy this burden, they must show that they were "injured in [their] business or property *by reason of* a violation of section 1962." *Id.* However, since SLI and Silva

never had a right to contract with Avangrid, they fail to allege that they were damaged "by reason of" a violation of 18 U.S.C. § 1962. The Counterclaims make conclusory allegations that SLI and Silva would have obtained a contract from Avangrid, but they point to no facts to plausibly suggest why SLI would have gotten the award absent a violation of the RICO statute. Avangrid can deal with whatever counterparty it wants to, and while the Counterclaims generally allege that SLI lost deals, SLI and Silva do not explain why Avangrid was required to award the contract to them specifically.

> ### 3.    Because SLI and Silva Have Not Shown a RICO Violation, Their Conspiracy Counterclaim Fails as Well.

In addition, SLI and Silva only provide conclusory allegations of conspiracy. They must plausibly plead each element of a RICO conspiracy, including knowledge of and agreement to facilitate a pattern of racketeering conduct, agreement to join the conspiracy, the acts of each co-conspirator in furtherance of the conspiracy, and knowing participation. *See Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006); *Black v. Ganieva*, 619 F. Supp. 3d 309, 348 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). They merely recite the statutory elements without providing facts. Additionally, "without a substantive RICO violation there can be no RICO conspiracy." *Nat'l Grp.*, 420 F. Supp. 2d at 272. As they have not adequately shown a pattern of RICO predicate acts, there is no RICO violation as the basis for a conspiracy.

> ## B.    The RICO Claims Are Time-Barred.

SLI and Silva base their claims of a RICO violation on the same alleged injuries in 2019 and the same predicate acts as their withdrawn 2021 claims. They are thus time-barred under RICO's four-year statute of limitations, which accrues when either the injury was known or a

reasonable person should have discovered it. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156–157 (1987); *Rotella v. Wood*, 528 U.S. 549, 554 (2000).

The Counterclaims admit that the injuries related to the predicate acts of extortion and theft of trade secrets occurred and were known to Defendants in 2019. Countercl. ¶¶ 228(a)-(c). The basis of SLI and Silva's extortion and theft of trade secrets claims are two interactions in 2019: the "April 2019 coercion" of SLI by Lathrop and Fitzgerald to share its bid intellectual property with B&V; and the August 2019 allegations of Lathrop and Allen inducing SLI to share its intellectual property with Prosegur and Cipher. *Id.* Accordingly, these injuries fall outside of the statute of limitations.

While the mail and wire fraud predicates vaguely reference communications from 2018 through 2022, the fraudulent scheme alleged would have been known to SLI and Silva before 2021, and the 2021-22 communications are statements not alleged to be false that no contract had been awarded. *See id.* ¶¶ 228(d), 229. SLI and Silva allege that "in 2018 through 2021, Avangrid… sent email communications" inviting SLI to submit bids even though Avangrid had "predetermined" that SLI would never be awarded the contracts. *Id.* ¶ 228(d). SLI and Silva plead that Lathrop joined Unlimited in January 2020, which demonstrates their knowledge of what they believe to be a significant date in the alleged scheme. *See id.* Accordingly, injuries related to the mail and wire fraud allegations also fall outside of the statute of limitations.

Further, these same allegations were previously filed as part of a RICO claim, and then voluntarily dismissed by SLI and Silva, in their November 2021 lawsuit. Decl. Exs. 1 & 2. That lawsuit alleged precisely the same overall scheme SLI and Silva now allege here—that some malign conspiracy deprived SLI of its supposed right to receive contracts from Avangrid—against

Avangrid and others. SLI and Silva thus cannot show that the statute of limitations is tolled—they were not only able to bring identical claims within the statute of limitations *but actually did so*.

Finally, SLI and Silva's Amended Counterclaims, filed after Avangrid asserted the statute of limitations issues in the letter exchange, throws in a new allegation of Avangrid suing SLI and Silva in New Mexico, telling Maine regulators about the suit, and issuing press releases denying Mr. Silva's 2021 claims. *See* Countercl. ¶ 229. But this does not toll the statute of limitations. Even if the lawsuit or regulatory communications constituted a valid RICO predicate, and they do not, *see* § IV.A.1.b *supra*, that would not extend the statute of limitations for prior acts that SLI and Silva knew about more than four years before filing suit. The Supreme Court specifically rejected the "last predicate act" theory of accrual for civil RICO claims. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 187 (1997). So whatever Avangrid supposedly did in the last four years must stand on its own; it does not revive time-barred injuries that were known or should reasonably have been discovered more than four years earlier.

## C. The Defamation Counterclaims Fail on Every Conceivable Level.

SLI and Silva do not allege that Avangrid's communications are false statements of fact. An "expression of pure opinion" is not actionable. *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986). "[O]nly statements alleging facts can properly be the subject of a defamation action." *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1992). SLI and Silva allege only vague negative opinions of Silva and SLI—which is not actionable. "[S]tay away" is not a statement of fact. Countercl. ¶¶ 220, 239, 243. A "good reputation" is subjective. *Id.* ¶¶ 220, 239, 241. "[D]isgruntled contractor" is an opinion and, if facts are implied, is true: Silva is disgruntled; perhaps he has good cause to be, perhaps not. *Id.* ¶¶ 229, 239, 243. And saying that SLI's legal trouble is "of its own making" is a vague statement of opinion too, as well as merely commenting on publicly filed allegations, which is protected under the fair comment defense and N.Y. Civ. Rts.

Law § 74. *Id.* ¶¶ 229, 239. The Counterclaims are devoid of any factual allegations about what is false about any of these statements, because it is simply impossible to say—they are opinions, not statements of fact.

Moreover, all of these statements are on matters of public interest—litigation and public comment that garnered press coverage and regulatory attention. They thus are subject to New York's broad adoption of the actual malice standard for "any communication in a place open to the public or a public forum in connection with an issue of public interest" or "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civ. Rts. Law § 76-a(1)(a)(2); *see Kesner v. Dow Jones & Co., Inc.*, No. 22-875, 2023 WL 4072929, at *2 (2d Cir. June 20, 2023). SLI and Silva offer no factual allegations whatsoever that any of these vague negative opinions were "made with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rts. Law § 76-a(2).

The claims are also untimely. Defamation claims are governed by a one-year statute of limitations, so statements before 2024 are time-barred. CPLR 215(3). The purported defamation took place in 2020 and allegedly continued in unspecified ways through 2022. Countercl. ¶ 239. On this basis alone, the Court should dismiss Defendants' defamation claim.

### D.    SLI and Silva's Tortious Interference Claims Fail for Multiple Reasons Too.

SLI and Silva allege that they were dropped as a subcontractor by Unlimited, but provide no factual details. Countercl. ¶ 248. They do not allege that doing so breached any contract between Unlimited and SLI, so their claim is subject to the demanding standards for tortious interference with prospective economic advantage. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,

50 N.Y.2d 183 (1980) (where contract is terminable at will, it is treated as a mere expectancy).[7]

SLI and Silva do not allege, except in conclusory terms, the high standard of culpability required for tortious interference with prospective economic advantage: either pure disinterested malice or independently illegal means. *See id.* At best, they allege that Avangrid did not want its contractor working with a particular subcontractor, which is not independently wrongful because companies are under no obligation to do business with any particular person and can generally decide that they do not trust someone to work for them for any reason.

SLI and Silva also allege that Avangrid's expression of the belief that its lawsuit against Silva had merit was somehow wrongful and derailed a takeover deal that was being discussed. But a claim that a statement damaged one's reputation must meet the standards for defamation claims; a deficient defamation claim cannot be dressed up as tortious interference. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988). This claim falls with the defamation claim.

And again, the claims are not timely. The statute of limitations is three years, and the alleged termination happened in 2019.. CPLR 214(4); *Linkable Networks, Inc. v. Mastercard Inc.*, 184 A.D.3d 418 (1st Dep't 2020); Countercl. ¶ 248. The 2021 CWV allegations are also time-barred for the same reason. Countercl. ¶¶ 219, 239.

### E.    The Contract Counterclaims Are Belied by the Terms of the EULA

SLI and Silva's EULA claims are belied by the EULA itself. They specify no term that was actually breached. They allege that Avangrid provided Avangrid's contractor with the licensed

---

[7] Even if this were an inducing breach case, Avangrid, as owner, indisputably has an economic interest in who performs services to it under subcontracts. *Stratford Materials Corp. v. Jones*, 118 A.D.2d 559, 561 (2d Dep't 1986) (owner has economic interest that justifies interference in contractor-subcontractor relationship). Because the economic interest appears on the face of the complaint, SLI and Silva must also plead "malice or illegality" to survive dismissal. *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 29-30 (S.D.N.Y. 2017), *aff'd,* 712 F. App'x 85 (2d Cir. 2018).

IP, but the EULA permits that. *See* Countercl. ¶¶ 228(c), 256-262. The EULA unambiguously provides Avangrid a license "in perpetuity" and "WITHOUT termination" and "unrestricted rights to utilize and modify the design for its own benefit or for the benefit of its operating companies, subsidiaries." Weir Decl. Ex. 5.

Thus, Avangrid was entitled to use the licensed IP in perpetuity as long as it was for their own benefit, and nothing alleges that Unlimited was provided with the Ironclad software for any reason other than to perform work for the benefit of Avangrid or Avangrid's subsidiaries. The Second Circuit has held specifically that, unless a license explicitly prohibits use of contractors, a licensee can exercise its license rights through hiring independent contractors.

> [W]e conclude that Great Minds' licensees may rely on *non-employee* agents in carrying out permitted uses… The License text provides no basis for distinguishing between a school that directs its employees to make copies on the school's machines and a school that achieves an identical result by enlisting a temporary independent contractor—or a commercial duplication service.

*Great Minds v. Fedex Off. & Print Servs., Inc.*, 886 F.3d 91, 96 (2d Cir. 2018); *see also Est. of Hevia v. Portrio Corp.*, 602 F.3d 34, 44-45 (1st Cir. 2010) ("When, as in this case, there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation.").[8]

The reality appears to be that Silva thought, incorrectly, that he had quietly monopolized Avangrid's cybersecurity needs by using some of his software. He thought that, with that small hook, he could leverage a small subcontract to later force Avangrid to award him more lucrative contracts and scare off competitors. These improper threats are why Avangrid brought declaratory judgment claims in the first place. SLI perpetually licensed the IP to Avangrid, so Avangrid can

---

[8] SLI and Silva elsewhere assert that the EULA was fraudulently induced, but these allegations do not remotely satisfy Rule 9(b) and are, in any event, flatly inconsistent with their claims for breach of the same contract.

have anyone it chooses operate the licensed IP for Avangrid's benefit.

The allegations related to a purported oral contract fail because the EULA and subcontract are integrated written contracts. When parties "have reduced their agreement to an integrated writing, the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations between the parties offered to contradict or modify the terms of their writing." *Marine Midland Bank-Southern v. Thurlow*, 53 N.Y.2d 381, 387 (1981). The Counterclaims describe that SLI "provided engineering services" and "licensed Ironclad® Runbook," but that is precisely what the subcontract and EULA respectively cover. Countercl. ¶ 271; Weir Decl. Exs. 5, 7. The parol evidence rule bars an inconsistent oral contract.

Even aside from this, the elements of an oral contract claim are simply not pleaded; at most the Counterclaims allege a vague suggestion of future collaboration and "compensat[ion]" with no specific terms. Countercl. ¶ 271. An oral agreement requires "clear and definite" terms and that the "conduct of the parties evinces mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Galarneau v. D'Andrea*, 184 A.D.3d 1064, 1066 (3d Dep't 2020); *Kramer v. Greene*, 142 A.D.3d 438, 439 (1st Dep't 2016). SLI and Silva loosely state that "Avangrid and SLI entered into an enforceable verbal and implied contract," which does not describe clear and definite terms or definite mutual assent. Countercl. ¶ 271.

And at any rate, SLI and Silva fail to allege Lathrop's authority to make such a promise, and SLI surely knew that he was not the decisionmaker on bids. They cannot plead that he is a faithless servant trying to extract kickbacks and yet that he also has authority to make oral promises for Avangrid. "When an agent abandons the object of his agency and acts for himself, by committing a fraud for his own exclusive benefit, he ceases to act within the scope of his employment and, to that extent, ceases to act as agent." *Credit All.*, 241 N.Y. at 220.

-25-

**F.**      **The Miscellaneous Unnumbered Counterclaims Are Entirely Conclusory.**

The unnumbered Counterclaims should be dismissed because no non-conclusory allegations are made. The fraudulent inducement claims conclusorily allege false promises without remotely attempting to meet the standards of Rule 9 (or even Rule 8) as to what those promises were, who made them, and when, or attempting to show a strong inference of scienter. A fraud claim requires that the defendant "intentionally made a material misrepresentation of fact in order to defraud or mislead" and that the plaintiff "reasonably relied on the misrepresentation and suffered damages as a result." *Connaughton v. Chipotle Mexican Grill, Inc.*, 135 A.D.3d 535, 537 (1st Dep't 2016), *aff'd*, 29 N.Y.3d 137 (2017). SLI and Silva merely conclusorily allege that Avangrid "knowingly made false promises to induce SLI into transferring its proprietary EULA [sic] without payment" and that "SLI reasonably relied on Avangrid's statements, trusting that a $40 billion company would not deceive a small business." Countercl. ¶¶ 275-76.

The unjust enrichment claim is also entirely conclusory and barred by the EULA, which governs the issue. *See Clark-Fitzpatrick, Inc. v Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987). Having expressly agreed to license Ironclad, SLI has no entitlement to quasi-contract compensation beyond the terms of the EULA. The promissory estoppel claim is also conclusory and fails to identify the promises or why reliance upon them was reasonable. Promissory estoppel requires a "clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise." *Clarke v. Clarke*, 237 A.D.3d 1039, 1040 (2d Dep't 2025). Again, SLI and Silva just parrot legal labels without pleading any non-conclusory facts. Countercl. ¶¶ 282-84.

Lastly, SLI and Silva intersperse their counterclaims with references to abuse of process. If this is supposed to be a separate count, it is simply not pleaded. The tort requires (1) "regularly issued process, either civil or criminal;" (2) "an intent to do harm without excuse or justification;"

(3) "use of the process in a perverted manner to obtain a collateral objective;" and (4) "an unlawful interference with person or property." *Perry v. McMahan*, 164 A.D.3d 1486, 1488 (2d Dep't 2018). Here, the claim fails at the first hurdle because, regardless of whether Mr. Silva and SLI think that this lawsuit will ultimately fail, filing a complaint cannot be abuse of process. *E.g.*, *Syllman v. Nissan*, 18 A.D.3d 221 (1st Dep't 2005). Nor do they allege any facts, as opposed to conclusory slogans, that the purpose of the complaint is anything other than to obtain the remedies it seeks. Countercl. ¶¶ 227, 229(e). The allegations of intent to harm are also entirely conclusory. *Id.* ¶ 242. And while abuse of process, unlike malicious prosecution, does not turn on whether a lawsuit was filed without a reasonable basis, calling a lawsuit a "sham" does not make it so. *Id.* ¶ 250. All the counterclaims seem to say is that they believe that Avangrid's claims will fail.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Defendants' Counterclaims in their entirety, with prejudice.

Dated:  July 16, 2025
New York, New York

                                      Respectfully submitted,

                                      STEPTOE LLP


                                      /s/ Joseph M. Sanderson
                                      By:   Joseph M. Sanderson
                                            1114 Avenue of the Americas
                                            New York, New York 10036
                                            Tel.: 212-378-7615
                                            Fax: 212-506-3950
                                            Email: josanderson@steptoe.com

                                            Thomas B. Watson (pro hac vice)
                                            633 West Fifth Street
                                            Suite 1900

Los Angeles, CA 90071
Tel: 213-429-9417
Email: twatson@steptoe.com


Robert W. Mockler
633 West Fifth Street
Suite 1900
Los Angeles, CA 90071
Tel: 213-429-9429
Email: rmockler@steptoe.com

*Attorneys for Avangrid Networks, Inc.*

## CERTIFICATION OF WORD COUNT

I hereby certify that the word count of this Memorandum of Law complies with the word limits of Rule III.D of this Court's Individual Practices. According to the word-processing system used to prepare this memorandum of law, the total word count, excluding the material excluded by rule, is 8,739 words.

/s/ Joseph M. Sanderson
Joseph M. Sanderson