UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AVANGRID NETWORKS, INC.; and
AVANGRID SERVICE COPMANY,

Plaintiffs,

-against-

SECURITY LIMITS, INC., and PAULO SILVA,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/23/2026

22 Civ. 9622 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Avangrid Networks, Inc., and Avangrid Service Company (together, "Avangrid"), bring this action against Security Limits, Inc. ("SLI"), and Paulo Silva, alleging, *inter alia*, breach of contract and extortion. *See generally* Compl., ECF No. 1. SLI and Silva bring various counterclaims against Avangrid, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), defamation *per se*, tortious interference with business relations, and breach of contract. *See generally* Am. Countercls., ECF Nos. 66–67. Avangrid moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the counterclaims. *See* Mot., ECF No. 82; Mem., ECF No. 83; *see also* Opp., ECF No. 87; Reply, ECF No. 88. For the reasons stated below, the motion is GRANTED.

## BACKGROUND[1]

Avangrid, Inc. is a sustainable energy company, with subsidiaries including Avangrid Networks, Inc. *See* Compl. ¶¶ 1, 7; Am. Countercls. ¶¶ 160–61. Avangrid, Inc. is owned by Iberdrola, A.S., a Spanish global energy company and non-party. Am Countercls. ¶¶ 162–65. Founded by Paulo Silva in 2007, SLI is a full-service technology, engineering, architecture, and

---

[1] Unless otherwise stated, all well-pleaded facts are taken from Silva's and SLI's amended counterclaims and accepted as true. *See IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 61 n.1 (2d Cir. 2019).

consulting solutions firm.  *Id.* ¶ 192.

In 2017, Avangrid sought to improve the reliability of its cybersecurity program and began hiring contractors and subcontractors to deliver on the cybersecurity improvement project. *Id.* ¶ 193.  Avangrid employee David Lathrop sought SLI's services as a subcontractor to SNC-Lavalin, the prime contractor for Phase 1 of the project, and on March 1, 2018, SLI entered into an independent contractor agreement with SNC-Lavalin.  *Id.*  The prime contractor for Phase 1 of the project changed over time—first, SNC-Lavalin, then, another firm referred to by the parties as B&V, and then, ultimately, to a firm referred to as UTI.  *Id.* ¶ 197.  Throughout this time, SLI worked as a subcontractor on Phase 1 of the project.  *Id.* ¶ 198; *see also* UTI Subcontract, ECF No. 85-6.  In its capacity as a subcontractor, SLI helped create the "Avangrid Secure Domain" ("ASD") using its "proprietary secure integrated private cloud architecture and design" known as Ironclad.  Am. Countercls. ¶¶ 192–94, 198.  The ASD "established an overall architecture for securing the critical infrastructure of Avangrid."  *Id.* ¶ 195.

Avangrid expressed enthusiasm over SLI's performance with the ASD, *id.* ¶ 200, and in about February 2019, Avangrid entered into an end-user license agreement ("EULA") with SLI for the licensing of Ironclad, *id.* ¶ 196.  The EULA licenses Ironclad to Avangrid and its subsidiaries "in perpetuity WITHOUT termination" and gives Avangrid "unrestricted rights to utilize and modify the design for its own benefit or for the benefit of its operating companies, subsidiaries."  EULA at 1, ECF No. 84-5.[2]

Avangrid also began seeking contractors for Phase 2 of its cybersecurity improvement project to work on the project's design and implementation.  Avangrid's "Security Program II" request for proposal ("RFP") was first proffered for bidding on February 18, 2019.  Am.

---

[2] The amended counterclaims do not attach but refer to the EULA.  Am. Countercls. ¶ 196.  Materials incorporated by reference may be considered on a motion to dismiss.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

Countercls. ¶ 200.  SLI, along with three competing firms, responded to this RFP.  *Id.* ¶ 201.  SLI and Silva allege that SLI was an "obvious choice" for these projects.  *Id.* ¶¶ 200–01.  But SLI did not immediately win the contract.  *Id.* ¶ 201.

SLI and Silva allege that Avangrid engaged in bid-rigging during Phase 2 by "wholly subvert[ing] the bidding process" in several ways.  *Id.* ¶ 202.  First, over time, the "RFPs were . . . refined and reissued," and SLI made further bids on each "progressively diminishing portion[]" of the RFP, as SLI's competitors were given opportunities to make new bids.  *Id.* ¶ 201.

Second, SLI alleges that Avangrid "tolerated (if not encouraged)" the sharing of SLI's confidential bidding information with other vendors, including Prosegur Security Monitoring ("PSM") and Cipher Security ("Cipher").  *Id.* ¶ 202.  Two Avangrid executives, Lathrop and John Allen, introduced Silva to PSM, and PSM, in turn, introduced Silva to Cipher.  *Id.* ¶ 203.  Notably, PSM and Cipher are each owned by Prosegur, a company with "close ties" to Avangrid's parent company, Iberdrola.  *Id.* ¶ 202.  In August 2019, at the encouragement of Lathrop, Prosegur executives, and the son of Iberdrola's CEO, SLI entered into a Mutual Confidentiality Agreement (the "NDA") with Cipher in "anticipation of a possible collaborative bid" for Avangrid's RFP.  *Id.* ¶¶ 202–03.  Relying on the NDA, SLI provided confidential information, including "business secrets regarding bid proposal requirements" and "pricing and corporate capabilities to be offered in support of a bid" to Cipher officials.  *Id.* ¶ 203.  But, "[i]nstead of considering a joint action, [Cipher and Prosegur] . . . utilized SLI proprietary business information" in its bid to Avangrid.  *Id.* ¶ 205.  Cipher "placed its own header on SLI's 15-page bid, and submitted the same paperwork."  *Id.*  The bid stated that it intended to keep SLI in subcontractor status and "'lock [Silva] to the project (till the end)" while "progressively reducing . . . dependency [on Silva] and taking control."  *Id.* ¶ 206.

Third, in mid-2018, Lathrop and another Avangrid employee, Tom Fitzgerald, encouraged SLI to bid on an "Advanced Metering Infrastructure" ("AMI") project. *Id.* ¶ 212. Although SLI's proposal was "technically superior," in April 2019, Lathrop and Fitzgerald directed SLI to "step aside" as a prime bidder and "demanded" that SLI turn over its bid package to B&V, including "proprietary methodologies, designs, and pricing." *Id.* "SLI shared its bid information in good faith; nevertheless, the contract was sole sourced to B&V." *Id.* "Internal communications later revealed that Avangrid's executives had pre-selected vendors like B&V, UTI, . . . , and Prosegur for contract awards and viewed SLI as an outsider threat." *Id.* ¶ 213. Finally, in February 2020, Avangrid released an RFP for another project and invited three Prosegur business units to bid against each other, pressuring SLI to undercut its own pricing. *Id.* ¶ 267.

In 2021, Silva testified at a New Mexico Public Utilities Commission ("PUC") public comment proceeding regarding "Avangrid's attempt to . . . merge or otherwise gain managerial control over New Mexico's power utilities." *Id.* ¶ 179; Compl. ¶ 41 n.4. In December 2021, Avangrid filed a lawsuit in New Mexico state court accusing Silva and SLI of "extortion" and "defamation." Am. Countercls. ¶ 215; NM Compl., ECF No. 84-3. The New Mexico district court dismissed Avangrid's suit, determining that Silva was immune from suit under New Mexico's strategic litigation against public participation statute ("Anti-SLAPP statute") because the suit challenged Silva's speech at a public hearing. *See* NM Appeal at 3, 8–9, ECF No. 84-4. The New Mexico Court of Appeals affirmed, *see id.* at 16–24, and the New Mexico Supreme Court denied Avangrid's petition for a writ of certiorari, *see* Am. Countercls. ¶ 216. In January 2022, Avangrid allegedly submitted to the Maine PUC an "altered and misleading copy of its New Mexico complaint against SLI," which omitted certain information related to discovery abuses. *Id.* ¶ 229.

Around the time of Avangrid's litigation in New Mexico, SLI and Silva filed a lawsuit in

the Southern District of New York against Avangrid, alleging much of the same conduct alleged in their counterclaims currently before the Court. *See* 2021 S.D.N.Y. Compl., ECF No. 84-1.[3]  In February 2022, SLI and Silva voluntarily dismissed the suit under Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See* Notice of Dismissal, ECF No. 84-2.

As a result of Avangrid's litigation and public statements against SLI and Silva (*e.g.*, labeling Silva as a "disgruntled contractor" in a December 2021 press release, *id.* ¶ 229), SLI has lost business opportunities. *Id.* ¶ 219.  In October 2020, a potential business partner informed SLI and Silva that Avangrid had warned "other prospective clients and partners . . . to 'stay away' from SLI and Silva" and told them that "Silva 'lacks a good reputation.'" *Id.* ¶ 220.  In August 2023, SLI was in "advanced discussions" to be acquired by another company, but the company's general counsel indicated via email that it would "only revisit [the] potential acquisition after [SLI's] settlement, and all open litigations, legal matters have come to an end." *Id.* ¶ 219.

## DISCUSSION

I.    <u>Legal Standard</u>

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 Civ. 6017, 2013 WL 342922, at \*2 (S.D.N.Y. Jan 18, 2013) (citation omitted).  To survive a Rule 12(b)(6) motion to dismiss, a pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555.  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  The Court must "accept the factual allegations of the pleadings as true

---

[3] *Security Limits, Inc. v. Avangrid Networks, Inc.*, No. 21 Civ. 10124 (GHW), filed Nov. 29, 2021.

and draw all reasonable inferences in favor of the non-moving party." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 199 (S.D.N.Y. 2008).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for allegations of fraud. *See Alony v. Chaitchik*, No. 24 Civ. 8723, 2025 WL 3551666, at \*7 (S.D.N.Y. Dec. 11, 2025); Fed. R. Civ. P. 9(b) (requiring fraud allegations to "state with particularity the circumstances constituting fraud"). "To comply with Rule 9(b)'s specificity requirements, 'the complaint must: (1) specify the statements that . . . were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 294 (E.D.N.Y. 2024) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

On a Rule 12(b)(6) motion, the court may consider only the pleading, documents attached to the pleading or incorporated by reference, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing suit. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). If "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 90 (S.D.N.Y. 2022) (citation omitted).

II.    <u>Analysis</u>

Defendants assert the following counterclaims against Plaintiffs: (1) substantive and conspiracy violations of RICO, 18 U.S.C. § 1961, *et seq.*; (2) defamation *per se*; (3) tortious interference with business relations; and (4) breach of contract. Am. Countercls. ¶¶ 230–75.

Plaintiffs move to dismiss all claims under Rule 12(b)(6).

### A. Civil RICO Claims

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(d) makes it unlawful to conspire to violate § 1962(c). Section § 1964(c) creates a cause of action for "[a]ny person injured in his business or property." *See Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 596 (2025).

To establish a RICO violation under § 1962(c), the complainant must show that they were injured by the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (citation omitted). "Section 1961(1) sets forth an exhaustive list of predicate 'acts' that can constitute a pattern of 'racketeering activity.'" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). To establish a RICO conspiracy under § 1962(d), the complainant "must demonstrate that the alleged coconspirators 'knew about and agreed to facilitate' the racketeering activity." *Alony*, 2025 WL 3551666, at *7 (quoting *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003)).

Because SLI and Silva fail to sufficiently allege a RICO predicate act, their civil RICO claims are dismissed. The Court considers each of the following alleged RICO predicate acts in turn: (1) extortion (under both N.Y. Penal Law § 155.05 and the Hobbs Act, 18 U.S.C. § 1951), (2) theft of trade secrets (18 U.S.C. § 1832); and (3) mail and wire fraud (18 U.S.C. §§ 1341,

1343).  Am. Countercls. ¶ 228(a)–(d).

    1.  Extortion

SLI and Silva allege that Avangrid committed acts chargeable as extortion under federal and state law by (1) "compell[ing] SLI to surrender its valuable property (its bid proposal, confidential technical data, and the opportunity to the win the contract) by instilling in SLI the fear of severe economic harm," and (2) using "economic fear," including "the threats implicit in Avangrid's baseless multi-million dollar lawsuit," to obtain SLI's "bid intellectual property."  Am. Countercls. ¶ 228(a)–(b).

Economic fear in commercial negotiations is insufficient to allege a RICO claim based on extortion.  "Extortion is defined as the 'obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence or fear, or under color of official right.'"  *Toms v. Pizzo*, 4 F. Supp. 2d 178, 184 (W.D.N.Y. 1998) (citing 18 U.S.C. § 1951(b)(2)), *aff'd*, 172 F.3d 38 (2d Cir. 1998).  "Use of 'economic leverage' in an ordinary commercial negotiation . . . does not constitute extortion."  *Toms*, 4 F. Supp. at 184; *see Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F. Supp. 213, 232 (S.D.N.Y. 1992) ("[T]he use of economic fear as leverage to drive a hard bargain in an ordinary commercial relationship will not support a RICO claim based on extortion." (citations omitted)).  Avangrid is allowed to impose bidding preferences on SLI and Silva, and SLI and Silva have not pleaded any right under a policy, contract, regulation, or statute entitling them to a contract based on their bid.

Avangrid's litigation also cannot form the basis of a RICO claim based on extortion. "Threats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion."  *Bouveng v. NYG Cap. LLC*, 175 F. Supp. 3d 280, 320 (S.D.N.Y. 2016) (alteration in original) (citation omitted).

Moreover, the pleadings do not sufficiently allege that Avangrid obtained any property from SLI other than that which was already licensed to it under the EULA. *See* EULA at 1; *see also Sekhar v. United States*, 570 U.S. 729, 734 (2013) (noting that "[o]btaining property [under the Hobbs Act and New York penal law] requires . . . that the extortionist 'gain possession'" of the property).

SLI and Silva have not, therefore, adequately alleged the RICO predicate of extortion.

### 2. Theft of Trade Secrets

SLI and Silva also fail to allege trade secrets theft in violation of 18 U.S.C. § 1832.

First, SLI and Silva appear to allege that Avangrid's use of Ironclad constitutes the theft of trade secrets. *See* Am. Countercls. ¶ 228(c). But SLI licensed Ironclad to Avangrid, giving Avangrid "unrestricted rights" to use Ironclad for its own benefit. EULA at 1. SLI has, therefore, failed to allege that Avangrid's use of Ironclad is trade secret theft.

Second, SLI and Silva appear to allege that Avangrid stole SLI's trade secrets by inducing SLI to share certain trade secrets with B&V and Prosegur. *See* Am. Countercls. ¶ 228(c). SLI and Silva allege that (1) Avangrid "demanded" that SLI share "its detailed AMI project design with B&V," and (2) "Prosegur, acting in concert with Avangrid, induced SLI to share sensitive security architecture [with Prosegur] under the guise of partnership." *Id.* These allegations are insufficient to state a claim that Avangrid stole trade secrets. For one, SLI and Silva admit that they voluntarily shared certain information with B&V and Prosegur affiliates in the hope of obtaining a contract from Avangrid for a collaborative project. *See* Am. Countercls. ¶¶ 212–13; *see id.* ¶ 228(b) (stating that the information was shared with "begrudging consent"). Additionally, SLI and Silva do not allege that B&V or Prosegur "acquired trade secrets under circumstances giving rise to a duty to maintain their secrecy or to limit their use" when submitting the Phase 2 bid. *See Wade*

*Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 382 (S.D.N.Y. 2022). And even if

B&V or Prosegur did steal SLI's trade secrets for the purposes of their own bids, SLI and Silva do

not plausibly allege that Avangrid either (i) knew that parts of B&V or Prosegur's bids reflected

allegedly misappropriated trade secrets or (ii) directed B&V or Prosegur to breach any terms under

which they acquired the information. *See id.* In other words, SLI and Silva have not plausibly

alleged that *Avangrid* stole any trade secrets. SLI and Silva assert that Avangrid acted "in concert"

with Prosegur to obtain SLI's trade secrets, but this is a conclusory statement. Am. Countercls.

¶ 228(c). The only factual allegation supporting this conclusion is that an Avangrid employee

introduced Silva to Prosegur, *see id.* ¶ 203, but this "stops short of the line between possibility and

plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation omitted).

SLI and Silva have, therefore, not adequately alleged the RICO predicate act of theft of

trade secrets.

### 3. Mail and Wire Fraud

"To state a RICO claim predicated on mail or wire fraud, a complaint must 'specify the

statements it claims were false or misleading, give particulars as to the respect in which plaintiffs

contend the statements were fraudulent, state when and where the statements were made, and

identify those responsible for the statements.'" *Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68

(2d Cir. 2015) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999)) (citing

Fed. R. Civ. P. 9(b)). SLI and Silva's allegations fall short of the strict specificity requirements of

Rule 9(b). They allege that from "2018 through 2021, Avangrid (through Avangrid Networks,

Iberdrola S.A. and Avangrid Inc. personnel) sent email communications to SLI in Pennsylvania

falsely representing that SLI was a bona fide contender for certain contracts[,] . . . even though

internally Avangrid had predetermined that those contracts would never be awarded to SLI." Am.

10

Countercls. ¶ 226(d).  These allegations do not identify who made fraudulent statements or when those statements were made.  SLI and Silva have, therefore, not adequately alleged the RICO predicate of mail and wire fraud, or any RICO predicate.[4]

### 4.   Statute of Limitations

Not only do SLI and Silva's RICO claims based on extortion and trade secrets fail on the merits, they are also time-barred under the four-year statute of limitations for civil RICO claims. *See Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987).  Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion where, as here, the defense appears on the face of the complaint.  *See Thomas v. New York City Dep't of Educ.*, No. 15 Civ. 8934, 2016 WL 4544066, at *3 (S.D.N.Y. Aug. 31, 2016), *aff'd*, 698 F. App'x 38 (2d Cir. 2017).

SLI and Silva filed their original counterclaims on January 25, 2025.  *See* Countercls., ECF No. 59–60.  Therefore, any claims that accrued before January 25, 2021, are time-barred.  The allegations relating to the extortion and trade secrets predicates were known to Silva and SLI before that date.  *See, e.g.*, Am. Countercls. ¶ 203 (alleging that SLI was coerced into signing an agreement with a Prosegur-affiliated company in August 2019), ¶ 212 ("In or around mid-2018, irregularities in Avangrid's bidding process became apparent."), ¶¶ 212–13 (alleging that Lathrop demanded that SLI work with B&V in April 2019), ¶ 214 (alleging that Silva made complaints about bid-rigging to Avangrid's and Iberdrola's compliance department in 2020).  Finally, there is no plausible basis for equitable tolling or equitable estoppel, which apply, respectively, when a claimant "has been prevented in some extraordinary way from exercising his rights" or "the

---

[4] That Avangrid allegedly transmitted an altered and misleading copy of its New Mexico complaint to Maine regulators is insufficient to state a civil RICO claim.  *See* Am. Countercls. ¶ 229.  SLI and Silva do not connect this conduct to any injury, one of the pleading requirements of a civil RICO claim.  *See Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 20 n.16, 23 (2d Cir. 1983).

[opposing party's] conduct caused [the claimant] delay in bringing his [claims]." *Thomas*, 2016 WL 4544066, at \*3. After all, SLI and Silva brought, and then voluntarily dismissed, a suit alleging these RICO claims in 2021. *See, e.g.*, 2021 S.D.N.Y. Compl. ¶¶ 136–55; Notice of Dismissal.

### 5. RICO Conspiracy

Because SLI and Silva fail to plead a substantive RICO offense, their RICO conspiracy claim must also be dismissed. *See Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006) (holding that without a substantive RICO violation, there can be no RICO conspiracy).

### B. Remaining Counts

The Court dismisses the remaining counts—defamation, tortious interference with business relations, and breach of contract. SLI and Silva do not respond with any specificity to Avangrid's arguments as to the defects in these counts. *See generally* Opp. (addressing only the RICO claims). Therefore, the Court deems each of these counts abandoned and dismisses them. *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 585 F. Supp. 3d 405, 423 (S.D.N.Y. 2022) ("At the motion to dismiss stage, a [counterclaimant] abandons a claim by failing to respond to [the opposing party's] arguments in support of dismissing that claim."); *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 393 (S.D.N.Y. 2021) (deeming a claim abandoned because of the failure to brief the issue in response to a motion to dismiss).

Even if the opposition brief could be construed as addressing these claims, dismissal of each claim is appropriate.

### 1. Defamation

Defendants allege defamation *per se* in connection with Avangrid's comments made about SLI and Silva in press releases and to business associates and partners. *See* Am. Countercls. ¶¶ 237–46. Defendants claim that Avangrid made the following allegedly defamatory statements between 2020 and 2022: statements advising business associates and potential partners to "stay away" from SLI and Silva; assertions that Silva "lacks a good reputation"; a statement in a press release that Silva was a "disgruntled contractor" and that SLI and Silva's claims in litigation are baseless; and a private representation to a prospective SLI investor that SLI was entangled in "legal trouble of its own making." *Id.* ¶ 239.

The statute of limitations for defamation claims in New York is one year. *Belton v. City of New York*, No. 12 Civ. 6346, 2014 WL 4798919, at *4 (S.D.N.Y. Sept. 26, 2014), *aff'd*, 629 F. App'x 50 (2d Cir. 2015). It is clear from the face of the counterclaims that the defamation claim is time-barred. SLI and Silva were aware of all of Avangrid's allegedly defamatory statements well before January 2024, and there is no plausible basis for equitable tolling or estoppel. *See* Countercls. (filed January 2025). For example, SLI and Silva were told that Avangrid made statements that potential business partners should "stay away" from them and that they lacked a "good reputation" in October 2020. Am. Countercls. ¶ 220. Avangrid stated that Silva was a "disgruntled contractor" and that his claims were baseless in a December 2021 press release. Am. Countercls. ¶ 229. Therefore, the Court concludes that the defamation claims are time-barred. *See Thomas*, 2016 WL 4544066, at *3.

### 2. Tortious Interference with Business Relations

In their tortious interference claim, SLI and Silva allege that (1) they had a valid business relationship and expectancy in certain contracts with Avangrid, and (2) they had a prospective

economic relationship with a company that was considering acquiring SLI, but, because of Avangrid's litigation, put the potential acquisition on hold.  Am. Countercls. ¶¶ 248–49.

The first basis for the tortious interference claim is time-barred.  "Under New York law, the statute of limitations for a tortious interference claim seeking a damages remedy, whether the claim is one for interference with existing contracts or with prospective business relations, is three years."  *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 262 (S.D.N.Y. 2023). On the face of the counterclaims and documents subject to judicial notice, it is clear that the statute of limitations has run.  SLI and Silva allege that the termination of SLI's involvement in Avangrid projects occurred in late 2019.  *See* Am. Countercls. ¶ 248.  And, as with their other claims, there is no plausible basis for equitable tolling or equitable estoppel.  *See Thomas*, 2016 WL 4544066, at *3.  After all, SLI and Silva brought, and then voluntarily dismissed, a suit based on this claim in 2021.  *See* 2021 S.D.N.Y. Compl. ¶¶ 265–70; Notice of Dismissal.

The second basis for the tortious interference claim also fails.  "Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'"  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (quoting *Carvel Corp. v. Noonan*, 360 F.3d 6, 17 (2d Cir. 2003)).  Such claims "must allege, among other things, that the defendant knew of the business relationship."  *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 911 (S.D.N.Y. 2016) (citing *id.*).  Moreover, "the defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with

14

the plaintiff." *Grgurev v. Licul*, 229 F. Supp. 3d 267, 294 (S.D.N.Y. 2017) (citation omitted). Here, SLI and Silva only allege that Clean Water Ventures, Inc. told SLI it would pause its acquisition of SLI until after a "settlement, and all open litigations, legal matters have come to an end." Am. Countercls. ¶ 219.  They do not claim that Avangrid "knew of, or interfered with, [the] specific opportunity." *Gym Door Repairs, Inc.*, 206 F. Supp. at 911; *see generally* Am. Countercls. They do not allege that Avangrid directed any conduct towards Clean Water Ventures, Inc., or even knew of this business relationship in the first place.  Therefore, even if the claim were not abandoned, SLI and Silva fail to state a claim for tortious interference with business relations.[5]

### 3.   Breach of Contract

SLI and Silva bring a breach of contract claim "based on Avangrid's unlawful procurement practices and fraudulent promises regarding the Ironclad . . . license and Phase-2 engagement." Am. Countercls. ¶ 254.  They allege that Lathrop "personally assured Silva that if he turned over the [EULA] at no cost, SLI would recover its full $5 million estimated license fee—ten times over—through its participation in Phase-2 of the Corporate Security Program." *Id.* ¶ 259.

The Court holds that SLI and Silva have not plausibly alleged that Avangrid, through Lathrop, orally agreed to compensate SLI for the Ironclad license by hiring SLI for Phase 2 projects.   "Under New York law, an oral agreement is not enforceable unless there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Anderson v. Greene*, 774 F. App'x 694, 697 (2d Cir. 2019) (citation omitted).  The Court agrees with Avangrid that the counterclaims only "allege a vague

---

[5] The amended counterclaims also include an email from Spinaker Security LLC informing SLI and Silva that Avangrid was making comments about them.  *See* Am. Countercls. ¶ 220.  This email is dated October 1, 2020, *id.*, so any claim related to this business opportunity is time-barred, for the reasons already stated.

suggestion of future collaboration and 'compensation' with no specific terms." Mem. at 25 (alterations adopted) (citing Am. Countercls. ¶ 271).

Even if the Court were to find that the parties entered an enforceable oral agreement, it was superseded by the subsequent EULA, which was a fully integrated agreement covering Avangrid's use of Ironclad. *See Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, No. 95 Civ. 8436, 1999 WL 771357, at *7 (S.D.N.Y. Sep. 29, 1999) ("Even in the absence of an integration and merger clause, a subsequent contract regarding the same subject matter supersedes the prior agreement."); *see* EULA at 1 (granting Avangrid a license "in perpetuity," "WITHOUT termination," and with "unrestricted rights to utilize . . . the design . . .for its own benefit"). Therefore, SLI and Silva fail to allege a breach of contract claim.

### 4. Unnumbered Counts

SLI and Silva appear to include a series of unnumbered counts regarding fraudulent inducement, unjust enrichment, and promissory estoppel. *See* Am. Countercls. ¶¶ 275–85. To the extent these are separate claims, the Court dismisses them. As to fraudulent inducement, the allegations are conclusory and do not meet the specificity standards of Federal Rule of Civil Procedure 9 as to what promises were made by whom and when. *See id.* ¶¶ 275–278; *Lerner*, 459 F.3d at 290. As to unjust enrichment with respect to the Ironclad license, the conclusory allegations do not plausibly explain how the claim is not covered by the EULA. *See Klein v. Frenkel*, No. 14 Civ. 2719, 2017 WL 2371173, at *3 (E.D.N.Y. May 30, 2017) ("Under New York law, there can be no cause of action for unjust enrichment when there is a valid contract governing the same subject matter between the parties."). Finally, as to promissory estoppel, SLI and Silva allege only that "Avangrid made clear and enforceable promises that SLI relied upon." Am.

Countercls. ¶ 282. The Court is not required to credit such "threadbare recitals" of a cause of action's elements. *Iqbal*, 556 U.S. at 678. The Court dismisses each of the unnumbered claims.

III.     Leave to Amend

In their opposition brief, SLI and Silva make a fleeting request for an opportunity to file a second amended answer with counterclaims. *See* Opp. at 21. The Court denies leave to amend because SLI and Silva have already amended their counterclaims once, and despite being presented with several opportunities to further amend their pleading, including multiple rounds of pre-motion letters, they did not take advantage of them. It is unclear how the defects in their counterclaims could be cured, and to date, SLI and Silva have not proposed any amendments. *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) ("[D]enial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured." (citation omitted)); *Ank Bey El v. CitiMortgage, Inc.,* No. 25 Civ. 2317, 2025 WL 3552702, at *8 (E.D.N.Y. Dec. 11, 2025) ("If [a party] attempts to request leave to amend in [its] opposition brief, without proposing specific amendments, the Court will not be inclined to grant leave to amend."). The Court therefore denies the request for leave to amend.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to dismiss Defendants' counterclaims is GRANTED, and all counterclaims are DISMISSED with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 82.

SO ORDERED.

Dated: February 23, 2026
       New York, New York

_____
ANALISA TORRES
United States District Judge

17